FILED

NOV 1 7 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIAN HILLS HOLDINGS, LLC, a California limited liability company, Plaintiff, v. CHRISTOPHER FRYE, an individual; CONSTRUCTION & DESIGN PROFESSIONALS, CORP., an Arizona domestic for profit (business) corporation, Defendant. | Case No.: 3:20-cv-00461-BEN-AHG **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT CONSTRUCTION & DESIGN PROFESSIONALS, CORP.** **[ECF No. 15]** |

## I.   INTRODUCTION

Plaintiff INDIAN HILLS HOLDINGS, LLC, a California limited liability company ("Plaintiff" or "IHH") alleges that Defendants CONSTRUCTION & DESIGN PROFESSIONALS, CORP., an Arizona corporation ("CDP"), and CHRISTOPHER FRYE, an individual and the owner of CDP ("Mr. Frye") (collectively, "Defendants") took Plaintiff's money in exchange for promising to provide Plaintiff with goods. *See generally* Complaint, ECF No. 1 ("Compl."). However, even though Plaintiff sent Defendants the money, Plaintiff never received the goods, and Defendants have not refunded Plaintiff's money. *Id.*

Before the Court is Plaintiff's Motion for Default Judgment against Defendant CDP

-1-

1  in the amount of $47,000.00 plus attorney's fees and costs (the "Motion").  ECF No. 15.

2  The Motion was submitted on the papers without oral argument pursuant to Civil Local

3  Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 17.  After

4  considering the papers submitted, supporting documentation, and applicable law, the Court

5  **GRANTS** Plaintiff's Motion.

6  **II.    BACKGROUND**

7      This case involves a tripartite relationship pursuant to which IHH paid Defendants

8  to purchase Cultivation "Adult" Extreme Cubes (the "Cubes"),[1] and Defendants, in turn,

9  contracted with ICT Centurion Investments, LLC, a suspended Colorado limited liability

10  company ("ICT")[2], to sell Defendants the Cubes it planned to sell to Plaintiff.  Motion,

11  ECF No. 15 ("Mot.") at 2:4-14.  When ICT rescinded its contract with Defendants and sold

12  the Cubes to another party, Defendants were unable to deliver the Cubes to Plaintiff yet

13  refused to refund the amounts Plaintiff had already paid.  *Id.*

14      **A.    Statement of Facts[3]**

---

15  [1]     The Cubes at issue in this case are modular cubes used to cultivate, grow, and/or

16  produce marijuana.  ECF No. 7-4 at 63, 69.

17  [2]     The Court takes judicial notice of these publicly available facts from the Colorado
    Secretary of State website.  FED. R. EVID. 201(c)(1) (allowing courts to take judicial notice

18  *sua sponte*); *L'Garde, Inc. v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 937-

19  38 (C.D. Cal. 2011) (taking judicial notice of records from the California Secretary
    of State website); *see also*  https://www.sos.state.co.us/ucc/pages/biz/bizSearch.xhtml

20  (showing ICT's corporate status).

21  [3]     After the Court enters a defendant's default, it must accept "'the well-pleaded factual
    allegations' in the complaint 'as true.'"  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854

22  (9th Cir. 2007).  Thus, the Court relies on the facts in the Complaint along with the facts

23  established from other evidence in the record, such as the declarations submitted in support
    of Plaintiff's previous motions to serve Defendants via substitute service.  *See* ECF Nos.

24  5, 7.  However, the "defendant is not held to admit facts that are not well-pleaded or to

25  admit conclusions of law."  *DIRECTV*, 503 F.3d at 854.  The Court also relies on certain
    facts in Mr. Frye's Motion to Dismiss, which confirm facts discussed in the Complaint.  As

26  discussed below, that motion references many facts that were not discussed or referenced

27  in the Complaint.  In reviewing that motion, the Court is mindful that "[a] document filed
    *pro se* is to be liberally construed … and a *pro se* [pleading], however inartfully pleaded,

28  must be held to less stringent standards than formal pleadings drafted by lawyers."

IHH is a California limited liability company organized in July 2019, with two managing members: Vincent Espinoza and Armand Nannicola.[4]  Declaration of Armand Nannicola in Support of Plaintiff's Motion for Order Authorizing Substitute Service of Summons, ECF No. 7-2 ("Nannicola Decl. No. 1") at 1, ¶¶ 1-2; Declaration of Vincent Espinoza in Support of Plaintiff's Motion for Order Authorizing Substitute Service of Summons, ECF No. 7-3 ("Espinoza Decl. No. 1") at 1, ¶ 1.

On October 23, 2019, at 10:32 a.m., Mr. Espinoza sent Mr. Frye an e-mail stating that IHH "would like to submit [a letter of intent] regarding 15 cultivation cubes that are for sale and located in the Palm Springs area." Exhibit I to Declaration of Daniel Heilbrun in Support of Plaintiff's Motion for Order Authorizing Substitute Service of Summons, ECF No. 7-4 ("Heilbrun Decl. No. 1") at 69.  He stated that once he received that

---

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). With that being said, "[g]enerally, unless the court converts the Rule 12(b)(6) motion into a summary judgment motion, it cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials)." Phillips & Stevenson, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:211 (The Rutter Group April 2020).  Courts may "consider exhibits attached to a complaint and incorporated by reference to be part of the complaint." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 964 (9th Cir. 2014) (affirming the lower court's consideration of exhibits attached to a complaint on a motion to dismiss); *see also* FED. R. CIV. P. 10(C) (explaining that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). Thus, "[a] copy of a written instrument that is an exhibit to a pleading," like the agreement attached to Plaintiff's Complaint in this case, "is a part of the pleading for all purposes." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). However, the Court cannot consider Mr. Frye's statements in his Motion to Dismiss that rely on material outside the complaint in ruling on this Motion.  Where the facts in Mr. Frye's Motion to Dismiss confirm or elaborate on facts in the Complaint and Motion for Default Judgment, however, the Court refers to and relies on such facts.

[4]     The Court also takes judicial notice of these publicly available facts from the California Secretary of State website.  *See* July 21, 2019, Articles of Organization, California Secretary of State (https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201920510423-26606203); August 23, 2019, Statement of Information, California Secretary of State (https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201920510423-26771506).

-3-

information, IHH "will decide whether to move forward with a purchase." *Id.*

On October 25, 2019, Mr. Frye responded at 3:57 p.m., asking Mr. Espinoza to "please respond to this email if you can agree to my requests," which included the following:

1. You are not responsible for paying me and **this is coming from the Seller**.[5] However, I do request that you require my approval of any final purchase agreement confirming that all parties have been adequately compensated.
2. When I do [is to] identify and introduce all parties that you further agree to keep me up to date and comprised of any significant events, unless, of course, I am in the actual discussions.
3. You are not, in any way, bound to use my company to dismantle, transport or set-up the Cubes, or even solicit a bid from me, however we are available for this.

ECF No. 7-4 at 68 (emphasis added). Mr. Frye also represented to Mr. Espinoza that he was "the sole shareholder of his business[,] CDP." Espinoza Decl. No. 1 at 1, ¶ 2, 2, ¶ 7.

On November 7, 2019, Mr. Frye shared a quote with Mr. Espinoza for Mr. Frye to perform work in California City, California. Espinoza Decl. No. 1 at 1, ¶ 3. IHH alleges that on the same day, it entered into an agreement with Defendants to purchase eight Cubes for $182,000.00. Compl. at 3:12-4:9; Declaration of Armand Nannicola in Support of Mot., ECF No. 15-3 ("Nannicola Decl. No. 2") at 1-2, ¶ 2.

This agreement, or Asset Purchase Agreement (the "APA"), was attached both to the Complaint as well as IHH's Motion for Default Judgment and states that it is between

---

[5] Plaintiff states in its Motion that at some time after signing the contract on November 7, 2019, it discovered that the Cubes it was purchasing were never in the possession of Mr. Frye or CDP, but instead, Defendants were simultaneously buying the Cubes from ICT for $109,000.00, a difference of $73,000.00. Nannicola Decl. No. 2 at 2, ¶ 4. In his Motion to Dismiss, Mr. Frye also states that Plaintiff "never signed the Asset Purchase Agreement, knew Defendant did not have Title to the Cannabis Grow Rooms and they were located on Real Property (owned by Abdel Maldonado) not owned or under the control of Defendant." ECF No. 19 at 3:1-3. The above e-mail, along with others, indicates Plaintiff knew Defendants did not own the Cubes and were, instead, being hired as a broker for IHH. Thus, the Court rejects Plaintiff's argument that it was unaware Defendants did not own the Cubes.

CDP and an undefined buyer; however, the APA did include a signature line for Vinny Espinoza. ECF Nos. 1-2 and 15-4 at 2, 7. The APA required the seller, or CDP, to "sell to Buyer," and "Buyer [to] purchase from Seller, on the terms and conditions set forth in this Agreement, the specific property described below, as determined by a complete inventory and accounting to be taken as shown on the attached inventory (Exhibit A)." ECF Nos. 1-2 and 15-4 at 2. The total costs to be paid under the APA were as follows:

| Quantity: | Description: | Cost: |
|---|---|---|
| 2 | 12'x24'x12' Cultivation "Adult" Extreme Cube | $50,050.00 |
| 2 | 12'x24'x12' Cultivation "Adult" Extreme Cube | $42,235.00 |
| 2 | 12'x24'x12' Cultivation "Adult" Extreme Cube | $42,235.00 |
| 2 | 12'x24'x12' Cultivation "Adult" Extreme Cube | $47,480.00 |
| TOTAL: | | $182,000.00 |

ECF Nos. 1-2 and 15-4 at 3.

The APA required the buyer to deposit **$50,000.00** into a specified bank account by November 21, 2019, leaving a balance of $132,000.00 to be paid on the closing date, when "the inventory, equipment, and fixtures to be transferred [would] be located at Santa Maria, California, and [would] not be removed without the written consent of the Buyer." ECF Nos. 1-2 and 15-4 at 3. The APA also includes the following representations:

> a. That Seller is the sole owner of the Assets with full right to sell or dispose of it as Seller may choose, and no other person has any claim, right, title, interest, or lien in, to, or on the Business or Assets.[6]
> b. That Seller has no undischarged obligations affecting the Assets being sold under this Agreement.

---

[6] This representation contradicts the e-mails between the parties indicating that Defendants were acting as a broker. However, the Court finds it unreasonable to believe that Plaintiff was unaware Defendants were procuring the Cubes from a third-party in light of the e-mails exchanged between the parties pre-dating the APA. Exhibit I to Heilbrun Decl., ECF No. 7-4 at 68.

    c. That there are presently and will be at the time of closing, no liens or security interests against the property and Assets being transferred herein.

    d. Consents. No consent from or other approval of a governmental entity, board of directors, or any other person is necessary in connection with the execution of the Agreement, or the consummation by Seller of the Assets by Buyer in the manner previously conducted by Seller.

    e. Inventory. The Inventory is merchantable and fit for its intended use and is free of any material defects in workmanship. The finished goods Inventory is of a type, quantity, and quality usable and salable in the ordinary course of business.

    . . . .

    b. Seller assumes all risk of loss, damage, or destruction to the Assets subject to this Agreement until the closing. If the Assets are damaged or lost prior to Closing such that their valuation is affected, Seller agrees to negotiate in good faith a reasonable reduction in the Payment Purchase Price to account for the lost value of the Assets.

ECF Nos. 1-2 and 15-4 at 3, 5.

The APA also requires the Seller to "jointly and severally indemnify and hold Buyer and its assigns harmless from any and all claims of any nature whatsoever." ECF Nos. 1-2 and 15-4 at 4. It further provides that it "shall be construed under and in accordance with the laws of the State of California." ECF Nos. 1-2 and 15-4 at 6. It also provides for recovery of attorney's fees by providing that "[s]hould any arbitration or litigation be commenced between the parties to this Agreement concerning the rights and duties of either party in relation to the Business or this Agreement, the prevailing party in the … litigation shall be entitled to (in addition to any other relief that may be granted) a reasonable sum and attorneys' fees in the … litigation." ECF Nos. 1-2 and 15-4 at 6. Finally, it states that it will "be executed on behalf of Construction & Design Professionals by Chris Frye and on behalf of _____ by Vinny Espinoza." ECF No. 15-4 at 7.

On November 15, 2019, at 7:32 a.m., Mr. Frye sent Mr. Espinoza, Mr. Nannicola, and Mr. Waheed an e-mail stating the following:

This is a Go, at the price we discussed **upon your approval** and **execution of this Agreement**. If possible, and convenient for you, I can meet with you on-site Tuesday, November 19th. As a reminder, we can do complete Facility Development for you; including electrical, foundation work, (as I hold both a C-10 Electrical and General Engineering "A" license)

Assembling these Cubes and any others you are purchasing is also within our areas of expertise.

We can provide you with a turnkey operation, ready for them to get to work for you.

Best Regards,
Chris Frye

Exhibit I to Heilbrun Decl. No. 1, ECF No. 7-4 at 71. Attached to this e-mail is a document entitled, "Asset Purchase Agreement DRAFT (XCubes) Rev 3 15_07_2019.pdf."[7]  *Id.*

Several months later, on January 2, 2020, at 10:17 a.m., Mr. Espinoza e-mailed Mr. Frye, asking, "OK, so these PODS[,] you [are] just basically buying them and then reselling them to us?" Exhibit H to Heilbrun Decl. No. 1, ECF No. 7-4 at 63. Mr. Frye responded to Mr. Espinoza and Mr. Nannincola that day stating:

Yes, buy/selling of surplus Cannabis equipment is part of our business. Our value added is to quality check, work with the Sellers on a realistic price, work with our Buyers to make sure they are a good fit and to work with all Parties to make sure we have a win/win transaction—no hangovers or after-purchase problems.

Most everything we sell we offer ancillary services, start-up, adding any missing components, customizing, modifying etc.

---

[7]    Although this e-mail indicates that the APA had not been signed as of November 15, 2019, the APA also contains a term stating that it "shall be effective as of the date first written above," which was November 7, 2019. ECF Nos. 1-2 and 15-4 at 7. However, Mr. Espinoza's Declaration also states that in early 2020, he met Mr. Frye in Campo, California to negotiate the terms of the sale of goods, implying that the contract at issue could not have been final in November 2019, if the terms were still subject to negotiation. Espinoza Decl. No. 1 at 1, ¶ 2. As discussed later, the Court finds that because the APA falls under various exceptions to the Statute of Frauds, it may enforce the APA.

> I do have a grow-expert on our staff who can outfit these for
> you and he is actually based in Riverside County, CA.

*Id.*; *see also* Exhibit B to the APA, ECF Nos. 1-2 and 15-4 at 9 (stating "Seller is a full-services engineering and construction company, experienced and qualified to set up, in working order, the Asset").

On January 27, 2020, Mr. Nannicola hired movers to pick up the Cubes from an agreed upon location at a cost of $5,000.00. Nannicola Decl. No. 2 at 2, ¶ 3. However, upon arrival, the Cubes were not in Defendants' possession. *Id.* at 2, ¶ 4. Instead, Plaintiff argues that it discovered at some later date, that Defendants were simultaneously buying these Cubes from ICT for $109,000.00, resulting in an alleged profit to Defendants of $73,000. *Id.* at 2, ¶ 4. However, ICT had found another buyer and never transferred the Cubes to Defendants, resulting in ICT refusing to honor its contract with Defendants, and Defendants failing to transfer the Cubes to Plaintiff. *Id.* at 2, ¶ 5.

Approximately four months later, on March 9, 2020, at 5:16 p.m., Defendants' attorney at the time, Karen O'Neil, Esq. ("Ms. O'Neil"), sent Plaintiff's counsel an e-mail, indicating that while the original seller of the cubes did not perform, IHH had also failed to timely perform. Exhibit F to Heilbrun Decl. No. 1, ECF No. 7-4 at 26. This e-mail provides as follows:

> There is a good deal of frustration on all sides of this transaction, that could have been avoided had the Seller properly performed and had your client performed more timely. **Had your client performed timely**, and not required an extension, **it is unlikely that the Seller would have unilaterally terminated the agreement**.

*Id.* (emphasis added).

Mr. Nannicola states that he "personally caused Indian Hills Holdings to tender $182,000.00 in reliance of the contract negotiated regarding the sale of goods that is the subject of this dispute." Nannicola Decl. No. 1 at 1, ¶ 3. However, even though Defendants were paid in full, they never delivered the Cubes negotiated in the APA. *Id.* at 1, ¶ 3. Further, when asked to return the money, Mr. Frye claimed he did not have the total amount

-8-

1  tendered, having misplaced $42,000.00 and still has not returned the entire amount to IHH.

2  Nannicola Decl. No. 1 at 1, ¶ 4.   However, shortly after filing this instant lawsuit,

3  Defendants returned $140,000.00 to IHH, meaning IHH is still owed an outstanding

4  $42,000.00.  Nannicola Decl. No. 2 at 2, ¶¶ 6-7.

5      Plaintiff's attorney, Daniel P. Heilbrun, Esq. ("Mr. Heilbrun"), states that he has

6  spent 26.9 hours of work on this case at a rate of $300.00 per hour, resulting in total fees

7  of **$8,070.00**.   Declaration of Daniel P. Heilbrun in Support of Plaintiff's Motion for

8  Default Judgment, ECF No. 15-2 ("Heilbrun Decl. No. 2") at 2, ¶ 5.  He also advises that

9  his client incurred costs totaling **$2,646.05**, which consist of a $400.00 filing fee and

10  $2,246.05 for service of process. *Id.* at 2, ¶ 6.  He also states that he informed Mr. Frye of

11  CDP's default, and Mr. Frye acknowledged that CDP would be defaulted, and that "he was

12  not going to file a response on behalf of [CDP] and that he was prepared for [CDP] to be

13  defaulted." *Id.* at 2, ¶ 8.  Mr. Heilbrun explains that additional attorney's fees were incurred

14  in this case due to Defendants' avoiding service of process for over a year, forcing Plaintiff

15  to file additional motions for service. *Id.* at 2, ¶ 9.

16      **B.   Procedural History**

17      On March 11, 2020, Plaintiff filed the Complaint against Defendants alleging claims

18  for relief for (1) breach of written contract; (2) fraud; and (3) unjust enrichment. Compl.

19  That same day, the Clerk of the Court issued the summons in this case. ECF No. 2.

20      On May 30, 2020, Plaintiff filed a Motion for Service by Publication, seeking to

21  serve both the individual and corporate defendants by publication.  ECF No. 5.   On

22  November 18, 2020, this Court denied that Motion *without prejudice* because, *inter alia*,

23  (1) Plaintiff's attempts to serve Defendants by mail did not effectuate service of process,

24  (2) Plaintiff had failed to show reasonable diligence in attempting to serve the individual

25  Defendant, Mr. Frye, and (3) service on a foreign corporation may not be accomplished by

26  publication. *See Indian Hills Holdings, LLC v. Frye*, 337 F.R.D. 293, 299 (S.D. Cal. 2020).

27  The Court gave Plaintiff a final ninety (90) day extension to serve Defendants.

28      On March 25, 2021, the Court issued an order granting Plaintiff's motion for an

-9-

1  order to serve CDP by service upon the Secretary of State, which had been filed on

2  February 17, 2021.  ECF Nos. 7, 8.

3       On April 26, 2021, Plaintiff filed a Proof of Service by personal service, showing it

4  had served CDP on April 20, 2021, by service upon the Arizona Secretary of State

5  Corporations Commission.  ECF No. 9.

6       On August 5, 2021, Plaintiff filed a Request to Enter CDP's Default on the basis that

7  CDP failed to file a responsive pleading within twenty-one (21) days.  ECF No. 11; *see*

8  *also* FED. R. CIV. P. 12(a)(1), 55.  On August 6, 2021, the Clerk of the Court entered CDP's

9  default accordingly.  ECF No. 12.

10       On August 18, 2021, Mr. Frye signed a Waiver of Service, meaning he had sixty

11  (60) days from signing the waiver, or until Monday, October 18, 2021, to respond to the

12  Complaint.  ECF No. 13; *see also* FED. R. CIV. P. 4(d)(3).

13       On September 8, 2021, Plaintiff filed a Motion for Default Judgment against CDP,

14  which was scheduled to be heard on Monday, October 18, 2021, which was also the

15  deadline for Mr. Frye to respond to the Complaint.  ECF No. 15.  On October 6, 2021,

16  before the hearing date and deadline, Plaintiff filed a Request for Entry of Default as to Mr.

17  Frye.  ECF No. 16.  However, because Mr. Frye had until October 18, 2021 to respond, the

18  Court did not enter Mr. Frye's default.

19       On October 14, 2021, the Court took the pending Motion for Default Judgment

20  against CDP under submission.  ECF No. 17.  On October 15, 2021, the Friday before the

21  hearing on Plaintiff's Motion for Default Judgment against CDP, Mr. Frye filed an

22  "Answer to Complaint and Motion to Dismiss."  ECF Nos. 18, 19.  This document was

23  deficient in a number of respects[8]; however, the Court issued a Discrepancy Order,

24  

_____

25  [8]  Among other issues, Mr. Frye's filing (1) had no proof of service, *see* S.D. Cal. Civ.

26  R. 5.2; (2) had no time and date on the motion and/or supporting documentation, *see id.* at
    5.1; (3) was submitted as both an answer and a motion to dismiss when Rule 12 of the

27  Federal Rules of Civil Procedure requires a responding party to submit *either* an answer *or*
    a Rule 12 motion, but not both; and (4) to the extent the filling was meant to be a Rule 12

28  motion, Mr. Frye failed to request a hearing date from the clerk, *see id.* at Rule 7.1(b).  *See*

1    accepting it Nunc Pro Tunc and setting a hearing date of Monday, November 15, 2021, at
2    10:30 a.m.  ECF No. 18.

3    **III.    LEGAL STANDARD**

4             "When a party against whom a judgment for affirmative relief is sought has failed
5    to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk
6    must enter the party's default." FED. R. CIV. P. 55(a).  Upon entry of default, Federal Rule
7    of Civil Procedure 55(b)(2) provides for the entry of default judgment by the Court.  Courts
8    considering a motion for default judgment begin their analysis by deferring to "the general
9    rule that default judgments are ordinarily disfavored" because "[c]ases should be decided
10   upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840
11   F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.
12   1986)).  Consequently, "[a] defendant's default does not automatically entitle the plaintiff
13   to a court-ordered judgment." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 877
14   (N.D. Cal. 2012) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D.
15   Cal. 2002)).  However, courts have discretion to grant a default judgment were appropriate.
16   *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  The Ninth
17   Circuit has set forth seven factors, known as the *Eitel* factors, that a district court should
18   consider when evaluating a motion for default judgment:

19
20               (1) the possibility of prejudice to plaintiff, (2) the merits of
                 plaintiff's substantive claim, (3) the sufficiency of the complaint,
21               (4) the sum of money at stake in the action, (5) the possibility of
                 a dispute concerning the material facts, (6) whether the default
22               was due to excusable neglect, and (7) the strong policy
23               underlying the Federal Rules of Civil Procedure favoring
                 decisions on the merits.
24

25   *Eitel*, 782 F.2d at 1471-72.  "None of the factors is dispositive in itself; instead, [courts]
26
     _____
27   *also* FED. R. CIV. P. 12(a)(4) (noting that "[u]nless the court sets a different time, serving a
     motion [to dismiss] alters these [time] periods" by requiring that an answer must be filed
28   within 14 days of the court's order denying a motion to dismiss).

-11-

1  must balance all seven." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th

2  Cir. 1993), *holding modified on other grounds by Yahoo! Inc. v. La Ligue Contre Le*

3  *Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

4        In determining the merits of a motion for default judgment, the well-pleaded factual

5  allegations are taken as true, except as to allegations regarding the amount of damages.

6  *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys.,*

7  *Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

8  **IV.   DISCUSSION**

9        As a preliminary matter, and because it implicates the instant Motion for Default

10  Judgment as to CDP, the Court notes that Mr. Frye's recent filing does not indicate on

11  whose behalf it is filed. *See* ECF No. 19.  Instead, it states that "[w]hen used herein, the

12  term 'Defendant,' may refer to one or both Defendants at any point" and does not specify

13  on whose behalf (*i.e.*, Christopher Frye, or his corporation, CDP) it was filed.  However,

14  under the Local Rules, "[o]nly natural persons *representing their individual interests* in

15  propria persona may appear in court without representation by an attorney permitted to

16  practice pursuant to Civil Local Rule 83.3." S.D. Cal. Civ. R. 83.3(k) (emphasis added).

17  "All other parties, **including corporations**, partnerships and other legal entities, **may**

18  **appear in court <u>only through</u> an attorney** permitted to practice pursuant to Civil Local

19  Rule 83.3."   S.D. Cal. Civ. R. 83.3(k) (emphasis added). *see also Laskowitz v.*

20  *Shellenberger*, 107 F. Supp. 397, 398 (S.D. Cal. 1952) ("Since a corporation cannot

21  practice law, and can only act through the agency of natural persons, it follows that it can

22  appear in court on its own behalf only through a licensed attorney."). Thus, even if Mr.

23  Frye intended to file his filing on behalf of CDP, he could not do so because (1) he is not

24  licensed and (2) even if retained counsel to appear on CDP's behalf, that attorney could

25  not file a motion to dismiss a complaint against a party that has already been defaulted, like

26  CDP, but would, instead, need to move to set aside CDP's default pursuant to Rule 55(c)

27  of the Federal Rules of Civil Procedure.  Thus, the Court treats the filing as having been

28  filed on Mr. Frye's behalf as an individual only.

Next, the Court notes that when ruling on a motion for default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" given that "[a] judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Thus, "[t]o avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *Id.*; *see also Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 961 (N.D. Cal. 2012) (adopting the report and recommendation of the magistrate judge to "deny Facebook's motion for default judgment and … dismiss this action for lack of personal jurisdiction"). "The Court is also required to assess the adequacy of the service of process on the party against whom default is requested." *DFSB*, 897 F. Supp. 2d at 877-78 (internal quotations omitted).

As to jurisdiction, generally, federal subject matter jurisdiction exists due to the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between the parties, *see* 28 U.S.C. § 1332. In cases arising out of diversity jurisdiction, section 1331 vests district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1331(a)(1). Plaintiff's Complaint pleads jurisdiction exists because Plaintiff is a California corporation suing Mr. Frye, an Arizona citizen, and CDP, an Arizona corporation. Compl. at 2, ¶ 1. In his Motion to Dismiss,[9] Mr. Frye argues this Court should dismiss this case because "[t]he matter before the Court is less than $75,000.00." ECF No. 19 at 6:27. However, Mr. Frye does not dispute living in Arizona or that CDP is an Arizona corporation. ECF No. 19 at 7:1-2. Thus, complete diversity exists. Further, as to the amount in controversy, courts evaluate the existence of diversity jurisdiction—including but not limited to the satisfaction of the amount in controversy—at the time of the filing of the complaint. *See, e.g., Rea v. Michaels*

---

[9] The Court acknowledges Mr. Frye's motion is not presently at issue but acknowledges his arguments as part of the Court's duty to investigate whether jurisdiction exists before entering default judgment. The Court will still address any arguments raised in the opposition and reply briefs for that motion, which have yet to be submitted.

1  *Stores Inc.*, 742 F.3d 1234, 1237 (9th Cir. 2014) (noting that "post-filing developments do

2  not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing")

3  (quoting *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) (internal

4  quotation marks omitted); *see also Barefield v. HSBC Holdings PLC*, 356 F. Supp. 3d 977,

5  985 (E.D. Cal. 2018).  Thus, the fact that Mr. Frye paid Plaintiff **$140,000.00** following

6  the filing of the Complaint in this case, thereby reducing the amount in controversy from

7  **$182,000.00** to **$42,000.00**, does not defeat the Court's original diversity jurisdiction over

8  this case at the time of filing.

9        The Court must also examine the propriety of service of process.  However, the

10  Court finds that not only were Defendants properly served, ample evidence exists in the

11  record to show Defendants' awareness of this lawsuit.  *See* Heilbrun Decl. No. 2 at 2, ¶ 8.

12  Accordingly, the Court continues by analyzing the *Eitel* factors.

13  **A.   *Eitel* Factors**

14        Plaintiff fails to discuss the *Eitel* factors or indicate how or why they would weigh

15  in favor of entry of a default judgment.  However, the Court upon weighing the factors

16  itself, finds entry of default judgment is warranted.

17            **1.   *The Possibility of Prejudice to the Plaintiff***

18        "Under the first *Eitel* factor, the Court must examine whether Plaintiff will be

19  prejudiced if the Court denies its request for entry of default judgment."  *IO Grp., Inc. v.*

20  *Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (citing *Eitel*, 782 F.2d at 1471-72).

21        Here, separate and aside from whether Defendants were securing the Cubes from

22  someone else, and whether that third-party (*i.e.*, ICT) breached a separate contract, the fact

23  remains that (1) Plaintiff paid **$182,000.00** in exchange for the Cubes; (2) Defendants

24  received payment in full; (3) Defendants never provided the goods; and (4) Defendant has

25  only reimbursed **$140,000.00**, leaving a balance of **$42,000.00**.  As a result, Plaintiff would

26  suffer prejudice if the Court denies its request for entry of default judgment.

27            **2.   *The Merits of the Substantive Claim and Sufficiency of the Complaint***

28        The second and third *Eitel* factors "require that a plaintiff state a claim on which the

-14-

[plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original); *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this test when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). As noted, the Court may treat as true those allegations in the complaint except those relating to damages. *TeleVideo*, 826 F.2d at 917-18. The Court analyzes the three claims for relief pled in the Complaint in turn.

a.   First Claim for Relief for Breach of Contract

A plaintiff pleading a claim for relief under California law must show (1) a legally enforceable contract between the parties; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach of that contract (e.g., by failing to perform or performing inadequately); and (3) damage to the plaintiff caused by the defendant's breach. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017); *see also Kingsley Mgmt., Corp. v. Occidental Fire & Cas. Co. of N. Carolina*, 441 F. Supp. 3d 1016, 1024 (S.D. Cal. 2020) (Curiel, J.) (citing *Reichert v. General Ins. Co.*, 68 Cal.2d 822 (1968)).

Plaintiff's First Claim for Relief for Breach of Contract pleads that (1) "Plaintiff entered into a contract with Defendants Construction & Design Professionals Corp. and Christopher Frye," Compl. at 7, ¶ 21; (2) "Plaintiff performed all relevant obligations under the contract," *id.* at 7, ¶ 22; (3) "Defendants failed to perform their obligations under the contract," *id.* at 7, ¶ 23; and (4) "Defendant's failure to perform its obligations under the contract has resulted in damages to Plaintiff," *Id.* at 7, ¶ 24.

First, in order to evaluate whether Plaintiff has stated a valid claim for relief for breach of contract, the Court must first evaluate whether the APA, which is not signed by Plaintiff, is enforceable against Defendants. The Court previously took judicial notice of the fact that the APA was never signed by Mr. Espinoza although it appears to be signed but not dated by Mr. Frye.[10] Order, ECF No. 6 at 13:25-27. As previously noted, *see id.*

---

[10]   Plaintiff seems to admit that it never signed the APA because Mr. Nannicola states in his declaration that Mr. Frye "executed the document and returned it to him." Nannicola

at 13:12-20, Section 2201 of the California Commercial Code requires contracts for the sale of goods "for the price of $500 or more" to (1) be in writing "sufficient to indicate that a contract for sale has been made between the parties" and (2) "signed by the party against whom enforcement is sought." CAL. COM. CODE§ 2201(1); *see also* CAL. COM. CODE § 120l(b)(37) (noting that "'signed' includes using any symbol executed or adopted with present intention to adopt or accept a writing"). Here, the contract was for **$182,000.00**. As such, the contract exceeded $500.00 and needed to be in writing, signed by the party to be bound, or Defendants.

Even if Mr. Frye had not signed the Contract (he did), however, the Court finds the APA enforceable. There are several exceptions to the Statute of Frauds requirement set forth in section 2201, where "[a] contract which does not satisfy the requirements of subdivision (1) but which is valid in other respects is enforceable." These exceptions include where (1) "the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller . . . has made either a substantial beginning of their manufacture or commitments for their procurement"; (2) "the party against whom enforcement is sought admits . . . in court that a contract for sale was made"; and/or (3) payment for the goods has already been made and accepted. CAL. COM. CODE § 2201(3).

Here, by interpreting the evidence in Defendants' favor, the first exception would not apply because the APA, which Plaintiff attached to the Complaint, states that "[t]he finished goods Inventory is of a type, quantity, and quality usable and salable in the ordinary course of business." ECF No. 1-2 at 2, §5(e). However, the second and third exceptions do apply. In Mr. Frye's Motion to Dismiss, however, he states that "the Parties acted upon the APA about Q4, 2019 when the first payment was made by Plaintiffs to Defendant." ECF No. 19 at 2:19-22. He also advises that IHH "drafted both Asset Purchase Agreements." *Id.* at 2:24-27. Finally, he seeks to compel arbitration, thus,

---

Decl. No. 1 at 1-2, ¶ 2. He never states he signed it or addresses who prepared the APA.

1  indicating he seeks to enforce the APA.  *Id.* at 6:9-14.  Thus, Mr. Frye, by seeking to

2  enforce the APA, admits a contract was made.  Thus, the second exception allowing

3  enforcement of a contract where "the party against whom enforcement is sought admits …

4  in court that a contract for sale was made" applies.

5        The third exception would also apply as Plaintiff alleges that "[i]n reliance and in

6  conformity with the Agreement at issue, Plaintiff provided $182,000.00 to Defendants as

7  full payment in accordance with the terms of the Agreement for the purchase of items."

8  Compl. at 5:11-13.  As noted, the APA attached to the Complaint provides that "a balance

9  of $132,000.00" shall be paid on the Closing Date, when the inventory, equipment, and

10  fixtures are transferred to a location in Santa Monica.  ECF No. 1-2 at 2, § 4.  Thus, the

11  APA attached to the complaint indicates that full payment was not due until Plaintiff

12  received the goods, which also proves the second element of a breach of contract claim:

13  performance by the plaintiff.  *See also* CAL. COM. CODE § 2310(a) (providing that unless

14  the contract provides otherwise, "[p]ayment is due at the time and place at which the buyer

15  is to receive the goods even though the place of shipment is the place of delivery").  Mr.

16  Frye's Motion to Dismiss admits that "[t]here were three payments made to Defendant by

17  Plaintiff."  *Id.* at 3:10-12.  Thus, it appears "payment for the goods had already been made

18  and accepted," allowing enforcement of the APA under the third exception to the Statute

19  of Frauds as well.

20        Finally, the Complaint adequately pleads that CDP breached the contract by failing

21  to deliver the Cubes, which caused Plaintiff damages.  Compl. at 7, ¶¶ 23-24.  Thus, the

22  Court finds that the Complaint sufficiently pleads a claim for relief for breach of contract,

23  and that claim for relief has merit in satisfaction of the first and second *Eitel* factors.

                          b.    Second Claim for Relief for Fraud

25        As to the second claim for relief, "[t]he elements of fraud are (1) misrepresentation;

26  (2) knowledge of falsity; (3) 'intent to defraud, i.e., to induce reliance;' (4) justifiable

27  reliance; and (5) resulting damage."  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th

28  951 (1997) , *as modified* (July 30, 1997); *see also Dent v. Nat'l Football League*, 902 F.3d

-17-

1109, 1125 (9th Cir. 2018) (citing *Engalla*, 15 Cal. 4th at 974 ("The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.") (internal quotations omitted).

"[C]laims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud 'must state with particularity the circumstances constituting fraud.'" *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1010 (S.D. Cal. 2020); *see also* FED. R. CIV. P. 9(b) (requiring that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constitute fraud or mistake"). Pleading claims for relief for fraud requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

Here, Plaintiff's Complaint alleges that (1) "Defendants fraudulently represented, *inter alia*, that Defendants were the full and unencumbered owner of the Items which is a material misrepresentation," Compl. at 7, ¶ 16; (2) "[i]n reliance [on] the representations made by Defendants and pursuant to the terms of the Agreement, Plaintiff wired the full obligation of $182,000.00 to Defendants," but "Defendants have failed to deliver the Items," *id.* at 7, ¶ 27; (3) "[i]f Plaintiff knew that Defendants were not the owners of the Items, Plaintiff would not have entered or, even more so, complete Plaintiff's obligations under the Agreement," *id.* at 7, ¶ 28; and (4) "[t]here is now due, owing, and unpaid from Defendants to Plaintiff the sum of $182,000.00 in the form of a refund together with interest thereon at the rate of 10 percent per year," *id.* at 7, ¶ 29.

The Court finds that first, the Complaint fails to sufficiently plead the fraud claim

-18-

1  by failing to plead the "who, when, where, and how" of the misconduct charged. *Vess*, 317

2  F.3d at 1106. Even if the Complaint had sufficiently plead such information, the evidence

3  in this case—namely, that submitted by Plaintiff—refutes a finding of fraud given it shows

4  Plaintiff was well aware Defendants never owned the Cubes and were, instead, acting as a

5  broker. Thus, the Court **DENIES** Plaintiff's Motion as to the fraud claim.

6  　　　　　　　　　　c.　　Third Claim for Relief for Unjust Enrichment

7  　　　　As to the third claim for relief for unjust enrichment, the Court notes that while

8  "California does not recognize unjust enrichment as a claim for relief," *see Astiana v. Hain*

9  *Celestial Grp., Inc.,* 25 783 F.3d 753,762 (9th Cir. 2015) (citing *Durell v. Sharp*

10  *Healthcare*, 183 Cal. App. 4th 26 1350, 1370 (2010)), federal courts have declined

11  dismissal of such a claim for relief on the basis that it may constitute a plausible claim for

12  quasi-contractual relief, *Jordan v. Wonderful Citrus Packing LLC,* No. 118CV00401A

13  WISAB, 2018 WL 4350080, at *3 (E.D. Cal. Sept. 10, 2018).

14  　　　　"The elements for a claim of unjust enrichment are [1]  receipt of a benefit and  [2]

15  unjust retention of the benefit at the expense of another."  *Lyles v. Sangadeo-Patel*, 225

16  Cal. App. 4th 759, 769 (2014) (quoting *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223

17  Cal. App. 4th 1105, 1132 (2014)) (internal quotations omitted).  "The theory of unjust

18  enrichment requires one who acquires a benefit which may not justly be retained, to return

19  either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched."

20  *Prakashpalan*, 223 Cal. App. 4th at 1132.

21  　　　　Plaintiff's Third Claim for Relief pleads that (1) "Defendants were unjustly enriched

22  because they received the benefit of the Agreement in the tendered amount of $182,000.00

23  after refusing to abide by the terms of the Agreement by not delivering the Items that were

24  subject of the Agreement," Compl. at 8, ¶ 33; (2) "[t]he full amount Plaintiff[ ] tendered as

25  a part of the Agreement would not have been achieved except for Defendants['] 

26  misappropriation," *id.* at 8, ¶ 34; and (3) "Plaintiff has incurred attorney's fees in

27  connection with this matter, in an amount to be determined at trial, which fees plaintiff is

28  entitled to  recover from pursuant to terms in the Agreement," *id.* at 8, ¶ 35.  These

-19-

allegations sufficiently plead that (1) Defendants received a benefit and (2) retaining the benefit would be unjust and at the expense of Plaintiff. *Lyles*, 225 Cal. App. 4th at 769. On that basis, the Court finds that merit exists to Plaintiff's claim for unjust enrichment.

### 3. *The Sum of Money at Stake in the Action*

Under the fourth *Eitel* factor, a court considers the amount of money at stake in relation to the seriousness of a party's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176-77. "Default judgment is disfavored when a large amount of money is involved," or the amount sought appears "unreasonable in light of the potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*, Case No. 11-cv-04287-LHK, 2012 WL 1156402, at \*3 (N.D. Cal. Apr. 6, 2012) (citations and internal quotation marks omitted).

In this case, the stake of money involved, **$42,000.00** plus attorney's fees and costs is reasonable, especially in light of the potential loss caused by Defendants' actions. Thus, this factor weighs in favor of a default judgment.

### 4. *The Possibility of a Dispute Concerning the Material Facts*

CDP has not filed an answer or otherwise responded to the operative complaint. Its failure to appear leaves the Court with an absence of any facts—let alone material facts—in dispute. In such cases, courts routinely find that no factual dispute exists, and that therefore, this *Eitel* factor weighs in favor of granting default judgment. *See, e.g., Garcia Pacheco*, 2019 WL 2232957, at \*4; *G&G Closed Circuit Events, LLC v. Aguilar*, Case No. 18-cv-0465-JM-BGS, 2018 WL 3656118, at \*2 (S.D. Cal. Jul. 31, 2018). Further, Mr. Frye's Motion to Dismiss does not dispute most, if not all, of the facts alleged in the Complaint (other than the amount in dispute given both parties now agree Mr. Frye repaid a portion of the amount sought since Plaintiff filed suit, making the amount plead in the Complaint improper).

As such, the possibility of a good faith dispute of material facts is low, and the fifth *Eitel* factor weighs in favor of granting this motion for entry of default judgment.

### 5. *Whether the Default was due to Excusable Neglect*

While courts "may consider whether there are circumstances surrounding a party's

failure to respond [that] constitute[] excusable neglect . . . a court may find excusable neglect to be lacking where a defendant was properly served with the complaint and notice of default judgment." *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, Case No. 16-cv-480-BEN-WVG, 2018 WL 8648381, at *3 (S.D. Cal. Apr. 4, 2018) (citations omitted).

Here, shortly after filing this lawsuit, Defendants returned **$140,000.00** to Plaintiff. Nannicola Decl. No. 2 at 2, ¶¶ 6-7. Mr. Nannicola of IHH also previously advised that he has been "in constant and continuous communication" with Defendants, who have confirmed their awareness of this lawsuit. Nannicola Decl. No. 1 at 1, ¶ 5. In fact, in the Court's order on the previous motions to serve Defendants via substituted service, it acknowledged that Ms. O'Neil had requested that Plaintiff refrain from attempting to default Mr. Frye but also refused to respond to repeated requests by Mr. Heilbrun to accept service of process on Mr. Frye's behalf. Exhibit G to Heilbrun Decl. No. 1, ECF No. 7-4 at 22, 24, 28, 35. Mr. Heilbrun also states that he informed Mr. Frye of CDP's default, and Mr. Frye acknowledged CDP would be defaulted, and that "he was not going to file a response on behalf of [CDP] and that he was prepared for [CDP] to be defaulted." Heilbrun Decl. No. 2 at 2, ¶ 8. Thus, no excusable neglect occurred here.

As such, the sixth *Eitel* factor is met and weighs in favor of granting this Motion.

### 6. *The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring a Decision on the Merits*

The policy favoring resolution of a case on the merits always weighs against default judgment. *NewGen*, 840 F.3d at 616. In this case, however, the other *Eitel* factors outweigh this policy because Defendant's "failure to answer Plaintiff's Complaint makes decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. In light of CDP's decision not to appear, default judgment is appropriate despite the policy favoring decisions on the merits. Accordingly, Plaintiff's Motion for Default Judgment against CDP is **GRANTED** as to the claims for breach of contract and unjust enrichment.

### B. Damages

Plaintiff seeks to recover damages incurred as a result of CDP's breach as well as

reasonable attorney's fees and costs incurred in bringing this lawsuit. *See* ECF No. 15 at 3-5. As outlined below, the Court finds it appropriate to award these damages.

### 1. *Compensatory Damages*

Plaintiff discusses damages recoverable under the California Civil Code. However, under California law, the California Commercial Code applies to any contract for the sale of goods. *See, e.g.*, CAL. COM. CODE § 2102 ("Unless the context otherwise requires, "this division applies to transactions in goods"). As stated, Plaintiff alleges that in November 2019, they entered into contracts to purchase the Cubes for **$182,000.00**, Compl. at 3:12-4:9, which qualify as goods. *See* CAL. COM. CODE § 2105(1) (defining "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid…"). Thus, the California Commercial Code applies to this case.

Sections 2711 and 2713 of the California Commercial Code addresses damages available to a buyer for non-delivery or repudiation of a contract for the sale of goods. Section 2711 states that "[w]here the seller fails to make delivery or repudiates … then with respect to any goods involved, … the buyer may cancel and whether or not he has done so may[,] ***in addition to recovering so much of the price as has been paid***[,]" recover the following amounts as well: (1) the cost of cover or (2) damages for nondelivery as provided in Section 2713. (Emphasis added). Section 2713, in turn, provides that "the measure of damages for nondelivery … by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this division (Section 2715), but less expenses saved in consequence of the seller's breach." CAL. COM. CODE § 2713(1).[11] These amounts breakdown as follows in this case:

---

[11]   Where the seller fails to deliver the goods, as was the case here, the buyer also has the right to (1) recover the goods if they have been identified to the contract, *see* CAL. COM. CODE §§ 2711(2)(a), 2502, or (2) demand specific performance, *see id.* at §§ 2711(2)(b), 2716. Because Plaintiff has not demanded these alternative remedies, the Court does not analyze them.

| | | |
|---|---|---|
| | $182,000.00 | (Price Paid) |
| | + $182,000.00 | (Market Price of Goods at the Time Buyer Learned of Breach[12]) |
| | - $182,000.00 | (Contract Price) |
| | + $   5,000.00 | (Incidental Damages[13]) |
| | +        0.00 | (Consequential Damages[14]) |
| | -        0.00 = | (Expenses Saved in Consequence of the Seller's Breach) |
| | $187,000.00 | (Total Damages) |
| | - $140,000.00 = | (Amounts Paid After the Filing of the Complaint) = |
| | $  47,000.00 | (Recoverable Damages) |

Thus, the Court awards Plaintiff the requested **$47,000.00** in damages.

### 2. *Costs*

Rule 54(d) of the Federal Rules of Civil Procedure creates a presumption favoring an award of costs to the prevailing party. *See, e.g., Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 375–76 (2013) ("describing the 'venerable' presumption that prevailing parties are entitled to costs); *see also Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 966 (9th Cir.), *cert. granted*, 139 S. Ct. 52, (2018), and *rev'd in part*, 139 S. Ct. 873 (2019) (noting that *Marx* remains binding precedent on the Ninth Circuit). Courts may award "taxable

---

[12]      "Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival." CAL. COM. CODE § 2713(2). Because Plaintiff provided no evidence as to the market price of the goods, the Court uses the contract price and assumes the market price did not change.

[13]      "Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, … and any other reasonable expense incident to the delay or other breach." CAL. COM. CODE § 2715(1). In the present case, the only known incidental damages are the $5,000.00 Plaintiff spent to pick up the Cubes. Nannicola Decl. No. 2 at 2, ¶ 3.

[14]      "Consequential damages resulting from the seller's breach include: (a) [a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) [i]njury to person or property proximately resulting from any breach of warranty." CAL. COM. CODE § 2715(2). Plaintiff has not provided any evidence of consequential damages.

costs" such as: (1) fees of the clerk and marshal; (2) fees for transcripts; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copying costs necessarily obtained; (5) docket fees; and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920; *see also Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (noting that these expenses are known as "taxable costs").   Rule 4(d)(2) of the Federal Rules of Civil Procedure also expressly provides that "[i]f a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court **must** impose on the defendant" any (1) "expenses later incurred in making service" and (2) "reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." *See also Est. of Darulis v. Garate*, 401 F.3d 1060, 1063 (9th Cir. 2005).

In this case, Plaintiff seeks to recover the following costs:

| Date: | Description: | Expenses: |
|---|---|---|
| 03/11/2020 | Filing fee | $400.00 |
| Unknown | Fees for service of process | $2,246.05 |
| **Subtotal:** | | **$2,646.05** |

*See* Heilbrun Decl. No. 2 at 2, ¶ 6.

Although Plaintiff provides no documentation for these costs, the Court acknowledges Defendants intentionally evaded service of process, and despite temporarily retaining an attorney, refused to allow her to accept service on their behalf.  This forced Plaintiff to incur increased costs to serve Defendants.  Thus, the Court awards all costs sought for filing fees and service of process in the amount of **$2,646.05**.

### 3.   *Attorney's Fees*

Plaintiff also seeks attorney's fees.  California entitles a prevailing party to reasonable attorney's fees "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract," are recoverable.  CAL. CIV. CODE § 1717(a).  Here, Section 15(e) of the APA provides that "[s]hould any … litigation be commenced between the parties to this Agreement concerning the rights and duties of either party in relation to … this Agreement, the

-24-

1    prevailing party in the … litigation shall be entitled to …. a reasonable sum and attorneys'

2    fees in the … litigation." ECF No. 1-2 at 7.  Plaintiff argues that this provision entitles it

3    to attorney's fees and costs incurred in enforcing the APA.  ECF No. 15 at 3:13-27.

4    Because the Court has determined that the APA is enforceable, the Court agrees.

5         "Once a party is found eligible for fees, the district court must then determine what

6    fees are reasonable." *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016)

7    (citation omitted).  "To determine the amount of a reasonable fee, district courts typically

8    proceed in two steps: first, courts generally apply the lodestar method to determine what

9    constitutes a reasonable attorney fee; and second, the district court may then adjust the

10   lodestar upward or downward based on a variety of factors, including the degree of success

11   obtained by the plaintiffs." *Bravo v. City of Santa Maria*, 810 F.3d 659, 665-66 (9th Cir.

12   2016).  The Supreme Court has indicated that the degree of success obtained is "'the most

13   critical factor' in determining the reasonableness of a fee award." *Farrar v. Hobby,* 506

14   U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  "It is an

15   abuse of discretion for the district court to award attorneys' fees without considering the

16   relationship between the extent of success and the amount of the fee award." *McGinnis v.*

17   *Ky. Fried Chicken,* 51 F.3d 805, 810 (9th Cir. 1994) (internal quotations omitted).

18        "The Supreme Court has instructed that the initial estimate of a reasonable attorney's

19   fee is properly calculated by multiplying the number of hours reasonably expended on the

20   litigation times a reasonable hourly rate, an approach commonly known as the

21   lodestar method." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (internal

22   quotations omitted) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)); *see also Hensley*,

23   461 U.S. at 433.  The party seeking attorneys' fees bears the burden of "submitting

24   evidence of the hours worked," the rate charged, and that "the rate charged is in line with

25   the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't.*,

26   470 F.3d 889, 891 (9th Cir. 2006) (internal quotation omitted).  "Where the documentation

27   of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461

28   U.S. at 433.

1    If the moving party in a fee motion "satisfies its burden of showing that the claimed

2  rate and number of hours are reasonable, the resulting product is presumed to be the

3  reasonable fee." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622-23 (9th Cir. 1993).

4  However, "[i]n determining the reasonableness of the award, there must be some evidence

5  to support the reasonableness of, *inter alia*, the billing rate charged, and the number of

6  hours expended." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir.

7  1983). In this regard, courts consider twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of
> the questions; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of employment by the attorney due
> to acceptance of the case; (5) the customary fee; (6) whether the
> fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and results
> obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the 'undesirability' of the case; (11) the nature
> and length of the professional relationship with the client; and
> (12) awards in similar cases.

15  *Hensley*, 461 U.S. at 430 n.3.

16    First, the Court evaluates whether Mr. Heilbrun seeks a reasonable hourly rate. "In

17  establishing the reasonable hourly rate, the Court may take into account: (1) the novelty

18  and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality

19  of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82

20  F. Supp. 3d 1154, 1170 (N.D. Cal. 2015). "A reasonable hourly rate is typically based

21  upon the prevailing market rate in the community for 'similar work performed by attorneys

22  of comparable skill, experience, and reputation.'" *Loomis v. Slendertone Distribution,*

23  *Inc.*, No. 19-CV-854-MMA (KSC), 2021 WL 873340, at *10 (S.D. Cal. Mar. 9, 2021)

24  (Anello, J.) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986)).

25    Mr. Heilbrun advises that his hourly rate is **$300.00** per hour. Heilbrun Decl. No. 2

26  at 2, ¶ 5. He also advises that he has been practicing law since his admission into the

27  California State Bar in 2012 but submits no other evidence as to how this rate is reasonable.

28  *Compare id. with Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is

-26-

1   the responsibility of the attorney seeking fees to submit evidence to support the requested

2   hourly rate."). However, the Southern District of California recently found reasonable a

3   lead counsel's hourly rate of $450.00 in February 2018. *See, e.g.*, *T.B. v. San Diego Unified*

4   *Sch. Dist.*, 293 F. Supp. 3d 1177, 1190 (S.D. Cal. 2018) (Anello, J.) (adopting the special

5   master's recommendation that $450.00 per hour constituted a reasonable hourly rate for

6   the two lead attorneys on the case). Similarly, the Court finds the hourly rate sought in this

7   case reasonable in light of the market rate for firms in Southern California. *See, e.g.*,

8   *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 718 (S.D. Cal. 2014)

9   (Moskowitz, J.), *aff'd sub nom. Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 F. App'x

10  920 (9th Cir. 2016) (adjusting a requested hourly rate of $525.00 and $620.00 per hour

11  down to $420.00 per hour because there was "insufficient evidence that there was an

12  intervening change in the local prevailing rate" for similar services to justify the higher

13  rate). Thus, the Court finds **$300.00** per hour is a reasonable hourly rate for an attorney

14  with nine (9) years of experience, including under all twelve factors discussed in *Hensley*.

15  461 U.S. at 430 n.3.

16      Second, having determined Mr. Heilbrun's hourly rate was reasonable, the Court

17  must determine whether the number of hours expended on the case was reasonable. In

18  seeking attorneys' fees, counsel must exercise proper "billing judgment" and exclude hours

19  that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

20  District courts must "conduct a … thorough and detailed inquiry concerning application[s]

21  [of a] fee request [to] the twelve factors listed in *Kerr*, particularly with respect to the

22  number of hours reasonably expended by attorneys … and the prevailing fees for work of

23  similar nature and quality in the area." *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378,

24  1385 (9th Cir. 1984) (reversing the district court's award of attorney's fees and remanding

25  for further proceedings). In demonstrating their hours are reasonable, counsel "should have

26  maintained records to show the time spent on the different claims, and the general subject

27  matter of the time expenditures ought to be set out with sufficient particularity, so the

28  district court can assess the time claimed for each activity." *Norman v. Hous. Auth. of the*

-27-

1   *City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

2          Mr. Heilbrun advises that he has spent 26.9 hours of work on this case at a rate of

3   $300.00 per hour, resulted in total fees of **$8,070.00**.  He explains that additional attorney's

4   fees were incurred in this case due to Defendants' avoiding service of process for over a

5   year, forcing Plaintiff to file additional motions for service. *Id.* at 2, ¶ 9.  However, Plaintiff

6   fails to file any support for these fees such as invoices to the client showing billing entries,

7   invoices for the costs of service of process, or filing fee statements from CM-ECF. *See,*

8   *e.g.*, *Hensley*, 461 U.S. at 433 (noting "[t]he party seeking an award of fees should submit

9   evidence supporting the hours worked and rates claimed," and "[w]here the documentation

10  of hours is inadequate, the district court may reduce the award accordingly").  On the one

11  hand, the Court acknowledges that some of the hours billed pertained to Plaintiff's initial

12  Motion for Publication, which the Court denied because (1) the law does not allow a

13  corporation, like CDP, to be served by publication and (2) Plaintiff failed to submit the

14  declarations required by statute to allow the Court to authorize service on the individual

15  defendant.  Had Plaintiff researched substituted service more diligently, he could have

16  avoided having to file a subsequent motion.  On the other hand, the Court acknowledges

17  that the only reason Plaintiff had to spent time pertaining to substitute service at all was

18  due to the fact that Mr. Frye refused to accept service himself and also did not authorize

19  his attorney to accept service of process on his behalf.  Thus, despite the fact that Mr.

20  Heilbrun has failed to provide the Court with evidence of the fees and costs incurred in this

21  case, the Court finds the number of hours expended in this case reasonable in light of the

22  additional work created and caused by Defendants' attempts to evade service of process.

23  Accordingly, the Court awards the full amount of attorney's fees sought in the amount of

24  **$8,070.00**.[15]

---

25  [15]     Although the Court has no evidence as to whether Mr. Heilbrun's fee was fixed or
26  contingent, this amount is reasonable in light of (1) the time and labor required; (2) the
    novelty and difficulty of the questions; (3) the skill requisite to perform the legal service
27  properly; (4) the preclusion of employment by the attorney due to acceptance of the case;
28  (5) the customary fee; (7) time limitations imposed by the client or the circumstances; (8)

## V.   **CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

1.     Plaintiff's Motion for Default Judgment as to Defendant CDP is **GRANTED** as to Plaintiff's claims for relief for breach of contract and unjust enrichment but **DENIED** as to the fraud claim.  The Clerk of the Court shall enter judgment in favor of Plaintiff INDIAN HILLS HOLDINGS, LLC and against Defendant CONSTRUCTION & DESIGN PROFESSIONALS CORP., an Arizona corporation ("CDP") as to Plaintiff's claims for relief for breach of contract and unjust enrichment in the following amounts:

| Damages: | Amount: |
| --- | --- |
| **Compensatory Damages:** | $47,000.00 |
| **Attorney's Fees:** | $8,070.00 |
| **Costs:** | $2,646.05 |
| **Subtotal:** | **$57,716.05** |

2.     The Court orders Plaintiff and Mr. Frye to participate in an Early Neutral Evaluation Conference before the Hon. Allison H. Goddard on January 7, 2022, at 2:00 p.m.

**IT IS SO ORDERED.**

DATED:    November / 7, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

---

the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

-29-