1

2

3

**FILED**

DEC **16** 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9

10

11   INDIAN HILLS HOLDINGS, LLC, a        )   Case No.:  3:20-cv-00461-BEN-AHG
     California limited liability company,  )

12                          Plaintiff,     )   **ORDER DENYING-IN-PART**
                                           )   **DEFENDANT CHRISTOPHER**
13   v.                                    )   **FRYE'S MOTION TO DISMISS**
                                           )
14   CHRISTOPHER FRYE, an individual;      )   **[ECF Nos. 19, 23, 24]**
15   CONSTRUCTION & DESIGN                 )
     PROFESSIONALS, CORP., an Arizona      )
16   domestic for profit (business) corporation,  )
17                                         )
                            Defendant.     )
18                                         )

19   **I.      INTRODUCTION**

20           Plaintiff INDIAN HILLS HOLDINGS, LLC, a California limited liability company

21   ("Plaintiff" or "IHH") alleges that Defendants CONSTRUCTION & DESIGN

22   PROFESSIONALS CORP., an Arizona corporation ("CDP"), and CHRISTOPHER

23   FRYE, an individual and the owner of CDP ("Mr. Frye") (collectively, "Defendants") took

24   Plaintiff's money in exchange for promising to provide Plaintiff with goods. *See generally*

25   Complaint, ECF No. 1 ("Compl.").  However, even though Plaintiff sent Defendants the

26   money, Plaintiff never received the goods, and Defendants have not refunded Plaintiff's

27   money. *Id.*

28           Before the Court is Mr. Frye's Motion to Dismiss (the "Motion"). ECF No. 19.  The

Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 24.  After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES-IN-PART** Mr. Frye's Motion.

## II.   BACKGROUND

This case involves a tripartite relationship pursuant to which IHH paid Defendants to purchase Cultivation "Adult" Extreme Cubes (the "Cubes"),[1] and Defendants, in turn, contracted with ICT Centurion Investments, LLC, a suspended Colorado limited liability company ("ICT")[2], to sell Defendants the Cubes it planned to sell to Plaintiff.  Motion, ECF No. 15 ("Mot.") at 2:4-14.  When ICT rescinded its contract with Defendants and sold the Cubes to another party, Defendants were unable to deliver the Cubes to Plaintiff but refused to refund the amount Plaintiff had already paid.  *Id.*

A more detailed factual history was included in the Court's most recent order on Plaintiff's Motion for Default Judgment and is incorporated herein.  *See Indian Hills Holdings, LLC v. Christopher Frye*, No. 3:20-cv-00461-BEN-AHG, 2021 WL 5360956, at *2-5 (S.D. Cal. Nov. 17, 2021).

As pertains to the instant Motion, on August 5, 2021, Plaintiff filed a Request to Enter CDP's Default on the basis that CDP failed to file a responsive pleading within twenty-one (21) days.  ECF No. 11; *see also* FED. R. CIV. P. 12(a)(1), 55.  On August 6, 2021, the Clerk of the Court entered CDP's default accordingly.  ECF No. 12.

On August 18, 2021, Mr. Frye signed a Waiver of Service, meaning he had sixty (60) days from signing the waiver, or until Monday, October 18, 2021, to respond to the

---

[1]    The Cubes at issue in this case are modular cubes used to cultivate, grow, and/or produce marijuana.  ECF No. 7-4 at 63, 69.

[2]    The Court takes judicial notice of these publicly available facts from the Colorado Secretary of State website.  FED. R. EVID. 201(c)(1) (allowing courts to take judicial notice *sua sponte*); *L'Garde, Inc. v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 937-38 (C.D. Cal. 2011) (taking judicial notice of records from the California Secretary of State website); *see also* https://www.sos.state.co.us/ucc/pages/biz/bizSearch.xhtml (showing ICT's corporate status).

1 | Complaint. ECF No. 13; *see also* FED. R. CIV. P. 4(d)(3).

2 |   On September 8, 2021, Plaintiff filed a Motion for Default Judgment against CDP,
3 | which was scheduled to be heard on Monday, October 18, 2021, which was also the
4 | deadline for Mr. Frye to respond to the Complaint. ECF No. 15. On October 6, 2021,
5 | before the hearing date and deadline, Plaintiff filed a Request for Entry of Default as to Mr.
6 | Frye. ECF No. 16. However, because Mr. Frye had until October 18, 2021 to respond, the
7 | Court did not enter Mr. Frye's default.

8 |   On October 15, 2021, the Friday before the hearing on Plaintiff's Motion for Default
9 | Judgment against CDP, Mr. Frye filed the instant "Answer to Complaint and Motion to
10 | Dismiss." ECF Nos. 18, 19. This document was deficient in a number of respects[3];
11 | however, the Court issued a Discrepancy Order, accepting it Nunc Pro Tunc and setting a
12 | hearing date of Monday, November 15, 2021, at 10:30 a.m. ECF No. 18. On October 27,
13 | 2021, Plaintiff timely opposed Mr. Frye's Motion. ECF No. 23. To date, no reply brief
14 | has been submitted.

15 |   On November 17, 2021, the Court granted Plaintiff's Motion for Default Judgment
16 | against CDP. ECF No. 25. That same day, the Clerk of the Court entered judgment in
17 | favor of Plaintiff and against CDP as to Plaintiff's claims for breach of contract and unjust
18 | enrichment in the following amounts:

| Damages: | Amount: |
|---|---|
| **Compensatory Damages:** | $47,000.00 |
| **Attorney's Fees:** | $8,070.00 |
| **Costs:** | $2,646.05 |

---

[3] Among other issues, Mr. Frye's filing (1) had no proof of service, *see* S.D. Cal. Civ. R. 5.2; (2) had no time and date on the motion and/or supporting documentation, *see id.* at 5.1; (3) was submitted as both an answer and a motion to dismiss when Rule 12 of the Federal Rules of Civil Procedure requires a responding party to submit *either* an answer *or* a Rule 12 motion, but not both; and (4) to the extent the filling was meant to be a Rule 12 motion, Mr. Frye failed to request a hearing date from the clerk, *see id.* at Rule 7.1(b). *See also* FED. R. CIV. P. 12(a)(4) (noting that "[u]nless the court sets a different time, serving a motion [to dismiss] alters these [time] periods" by requiring that an answer must be filed within 14 days of the court's order denying a motion to dismiss).

-3-

| Subtotal: | $57,716.05 |
|---|---|

## III.   LEGAL STANDARD

Mr. Frye moves to dismiss the Complaint by arguing that (1) the Court lacks subject matter jurisdiction and (2) Plaintiff's claims fail to state a claim for relief.

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction.   Federal courts are courts of limited jurisdiction; thus, district courts only possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   Consequently, district courts are presumed to lack jurisdiction unless the Constitution or a statute expressly provides otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to (1) legal and equitable cases "arising under this Constitution, the Laws of the United States, and Treaties made" and (2) controversies, *inter alia*, to which the United States is a party, between two or more states, and citizens of different states.   U.S. CONST. ART. III, § 2.   The "case or controversy" requirement of Article III requires courts to find that a case presents a "justiciable" controversy by determining that (1) the plaintiff has demonstrated standing, "including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical,'" and (2) the case is "ripe," or in order words, "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 14 S. Ct. 530, 534-35 (2020); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (noting that standing and ripeness become the same question when a licensee seeks a declaration of invalidity).

As to the requirement that a case arises under a law of the United States, generally, federal subject matter jurisdiction exists due to statutory authorization resulting from the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between the parties, *see* 28 U.S.C. § 1332.

-4-

1   If a court determines at any time it lacks subject matter-jurisdiction under Article III
2   or a federal statute, it "must dismiss the action." FED. R. CIV. P. 12(h)(3). "Dismissal for
3   lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety,
4   on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re*
5   *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir.
6   2008). The party seeking to establish federal jurisdiction bears the burden of establishing
7   it. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

8   **B.   Motion to Dismiss for Failure to State a Claim**

9   Under FRCP 12(b)(6), a complaint must be dismissed when a plaintiff's allegations
10  fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell*
11  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679
12  (2009) (holding that a claim must be facially plausible to survive a motion to dismiss). The
13  pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide
14  "more than labels and conclusions, and a formulaic recitation of the elements of a cause of
15  action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265,
16  286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded
17  factual allegations and construes all factual inferences in the light most favorable to the
18  plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
19  2008). However, a court is not required to accept as true legal conclusions couched as
20  factual allegations. *Iqbal*, 556 U.S. at 678.

21  In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of
22  the complaint and material properly submitted with it. *Van Buskirk v. Cable News*
23  *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner*
24  *& Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, under the incorporation
25  by reference doctrine, the court may also consider documents "whose contents are alleged
26  in a complaint and whose authenticity no party questions, but which are not physically
27  attached to the pleading" without converting a motion to dismiss to a motion for summary
28  judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*

by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).  The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "Plaintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations." Phillips & Stevenson, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:212a (The Rutter Group April 2020); *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-08 (9th Cir. 2015) (noting that courts "need not accept as true allegations contradicting documents that are referenced in the complaint").  Courts may also consider any statements made in a pleading or motion, including concessions made in plaintiff's response to the motion to dismiss as well as in response to any other pleading or motion.  FED. R. CIV. P. 10(C).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend.  The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted.  *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where . . . further amendment would be futile.").

## IV.   **DISCUSSION**

As a preliminary matter, and as noted in the Court's previous order, *see* ECF No. 25, the Court notes that Mr. Frye's recent filing does not indicate on whose behalf it is filed.  *See* ECF No. 19.  Instead, it states that "[w]hen used herein, the term 'Defendant,' may refer to one or both Defendants at any point" and does not specify on whose behalf (*i.e.*, Christopher Frye, or his corporation, CDP) it was filed.  However, under the Local Rules, "[o]nly natural persons ***representing their individual interests*** in propria persona may appear in court without representation by an attorney permitted to practice pursuant to Civil Local Rule 83.3."  S.D. Cal. Civ. R. 83.3(k) (emphasis added).  "All other parties,

-6-

1   **including corporations**, partnerships and other legal entities, **may appear in court only**
2   **through an attorney** permitted to practice pursuant to Civil Local Rule 83.3." S.D. Cal.
3   Civ. R. 83.3(k) (emphasis added); *see also Laskowitz v. Shellenberger*, 107 F. Supp. 397,
4   398 (S.D. Cal. 1952) ("Since a corporation cannot practice law, and can only act through
5   the agency of natural persons, it follows that it can appear in court on its own behalf only
6   through a licensed attorney."). Thus, even if Mr. Frye intended to file his filing on behalf
7   of CDP, he could not do so because he is not licensed to practice law. Thus, the Court
8   treats the filing as asserted by Mr. Frye on his own behalf as an individual only.

9        Mr. Frye's filing seeks dismissal on two primary grounds: First, he argues that the
10  Court should dismiss this case because it lacks subject matter jurisdiction due to (1) the
11  case being subject to arbitration; (2) Plaintiff lacking standing to seek relief in federal court
12  because the contract at issue violates federal law; and (3) the lack of diversity jurisdiction.
13  ECF No. 19 at 6-7. Second, the Court construes Mr. Frye's filing as arguing that the
14  complaint pleads insufficient facts to state a claim for relief. However, upon evaluating
15  both arguments for dismissing this case, the Court finds that it does have subject matter
16  jurisdiction and only the fraud claim merits dismissal. Thus, the Court **DENIES** Mr. Frye's
17  motion as to the breach of contract and unjust enrichment claims but **GRANTS** the motion
18  as to the fraud claim.

19       A.   **Motion to Dismiss for Lack of Subject Matter Jurisdiction (FRCP**
20            **12(b)(1))**

21       Mr. Frye argues that the Court should dismiss this case because (1) the parties agreed
22  to arbitrate; (2) Plaintiff, a cannabis company, has "limited standing" in federal court; and
23  (3) diversity jurisdiction is lacking in this case. ECF No. 19 at 6:9-14. Plaintiff responds
24  that because the Complaint pleads that the amount in controversy is $182,000.00, exclusive
25  of costs and fees, the Court should not dismiss this case as the amount in controversy
26  exceeds the jurisdictional minimum of $75,000.00. ECF No. 22:12-20. Plaintiff also
27  argues that Mr. Frye's request for removal is not timely.[4]   *Id.* at 4:21-4. The Court

28  ────────────────────
    [4]    Plaintiff's opposition repeatedly refers to a "Request for Removal," but because this

1    addresses each argument in turn below but finds that none of them carry the day.

2            **1.**    ***Arbitration***

3          Mr. Frye argues that neither party may initiate a lawsuit in federal or state court

4    because both parties acted on the Asset Purchase Agreement (the "APA"), and that APA

5    contains an arbitration clause. ECF No. 19 at 6:9-14.

6          As an initial matter, "[m]otions to compel arbitration are treated generally as motions

7    to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil

8    Procedure 12(b)(1)." *Ferriol v. Parrillada Las Vacas Gordas, Inc.*, No. 15-20636-CIV,

9    2015 WL 1968848, at *1 n.1 (S.D. Fla. Apr. 30, 2015) (quoting *Nelson v. City of Live

10   Oak,* No. 3:11-cv-00549-J-32JBT, 2011 WL 5006472, at *1 (M.D. Fla. Oct.20, 2011))).

11   Thus, the Court construes Mr. Frye's arguments concerning arbitration as a motion to

12   compel arbitration and dismiss for lack of subject matter jurisdiction. As will be seen,

13   evidence of an agreement to arbitrate is lacking.

14         Where a defendant moving to compel arbitration also seeks dismissal of the case

15   pursuant to Rule 12(b)(1), the "jurisdictional attack may be facial or factual." *Safe Air for

16   Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving

17   party "asserts that the allegations contained in a complaint are insufficient on their face to

18   invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In a factual attack, the moving

19   party "disputes the truth of the allegations that, by themselves, would otherwise invoke

20   federal jurisdiction." *Id.* Further, on a motion to dismiss, the Court must construe all

21   reasonable inferences in favor of the nonmoving party, *Manzarek*, 519 F.3d at 1031, but

22   has no obligation to draw unreasonable inferences when determining whether the pleading

23   ————————————

24   case was originally filed in federal court, removal would not be possible as cases are
     removed to federal court and remanded to state court. Thus, the Court construes all of

25   Plaintiff's references to a "request for removal" as a reference to a "request for remand,"
     not removal. Because this case was originally filed in federal court, the Court disregards

26   Plaintiff's arguments as to the timeliness of Mr. Frye's attempts to remand the case

27   particularly given if this case had been removed to federal court, Plaintiff's attempts to
     remand at this point in time would, indeed, be untimely. *Caterpillar Inc. v. Lewis*, 519

28   U.S. 61, 69 (1996) (citing 28 U.S.C. § 1447(c)).

1  under attack states a plausible claim, *see, e.g., Steckman v. Hart Brewing, Inc.*, 143 F.3d
2  1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory
3  allegations which are contradicted by documents referred to in the complaint."); *Cisco Sys.,*
4  *Inc. v. Capella Photonics, Inc.*, No. 20-CV-01858-EMC, 2020 WL 4923697, at *3 (N.D.
5  Cal. Aug. 21, 2020), *motion to certify appeal denied,* No. 20-CV-01858-EMC, 2020 WL
6  7227153 (N.D. Cal. Dec. 8, 2020) ("When a written instrument contradicts allegations in
7  a complaint to which it is attached, *the exhibit trumps the allegations*."). Here, many of
8  Mr. Frye's arguments seem to confirm the facts pled in the complaint and simply seek to
9  explain those facts and argue they are insufficient to state a claim in this case. Thus, the
10  Court interprets Mr. Frye's filing as a factual attack given neither party disputes the
11  existence of a contract. However, for the Court to dismiss this case because of an
12  arbitration provision, it would have to find an enforceable arbitration agreement exists.
13      Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration
14  agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist
15  at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the court has
16  determined that an arbitration agreement relates to a transaction involving interstate
17  commerce, thereby falling under the FAA, the court's only role is to determine [1] whether
18  a valid arbitration agreement exists and [2] whether the scope of the dispute falls within
19  that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at
20  *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys.,*
21  *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Further, federal substantive law governs the
22  scope of an arbitration agreement. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126
23  (9th Cir. 2013). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable
24  issues should be resolved in favor of arbitration, whether the problem at hand is the
25  construction of the contract language itself or an allegation of waiver, delay, or a like
26  defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131
27  (9th Cir. 2000). State contract law, on the other hand, governs issues pertaining to the
28  validity, revocability, and enforceability of an agreement to arbitrate. *See Revitch v.*

1 | *DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020).

2 |       Section 2 of the FAA governs the enforcement of agreements to arbitrate and

3 | provides that a provision to settle by arbitration a controversy arising out of a contract

4 | covering a transaction involving interstate commerce "shall be valid, irrevocable, and

5 | enforceable, save upon such grounds as exist at law or in equity for the revocation of any

6 | contract." 9 U.S.C. § 2; *see also* 9 U.S.C. § 1 (defining "commerce" as "commerce among

7 | the several States"). Thus, the FAA's "savings clause" allows a party to challenge an

8 | otherwise valid arbitration agreement based on any state law contract defenses, such as

9 | fraud, mistake, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S.

10 | 681, 686-87 (1996). Here, to decide if the parties agreed to arbitration, the Court looks to

11 | California contract law.

12 |       Under California law, the "[e]lements essential to existence of a contract are: (1)

13 | [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4)

14 | [s]ufficient cause or consideration." *Grimes v. New Century Mortg. Corp.*, 340 F.3d 1007,

15 | 1011 (9th Cir. 2003) (McKeown, J., dissenting) (citing CAL. CIV. CODE § 1550).

16 | "Consent of the parties to a contract must be: (1) [f]ree; (2) [m]utual; and (3)

17 | [c]ommunicated by each to the other." CAL. CIV. CODE § 156. The FAA "leaves no place

18 | for the exercise of discretion by a district court, but instead mandates that district courts

19 | shall direct the parties to arbitration on issues as to which an arbitration agreement has been

20 | signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, "[w]hile

21 | the FAA 'requires a writing, it does not require that the writing be signed by the parties.'"

22 | *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439-40 (9th Cir. 1994).

23 |       In this case, as part of his argument that the Court should dismiss this case, Mr. Frye

24 | argues that this case must be arbitrated because of the APA's arbitration provision. ECF

25 | No. 19 at 6:9-14. The APA includes the following provision:

26 |         In the event the parties are not able to resolve any dispute between them arising out of or concerning this Agreement, or

27 |         any provisions hereof, whether in contract, tort, or otherwise at law or in equity for damages or any other relief, then such

28 |

-10-

dispute shall be resolved only by final and binding arbitration pursuant to the Federal Arbitration Act and in accordance with the American Arbitration Association rules then in effect, conducted by a single neutral arbitrator and administered by the American Arbitration Association in a location mutually agreed upon by the parties.

Exhibit "A" to Complaint, ECF No. 1-2 at 6. However, the APA also includes two blanks for the buyer and seller to specifically initial this arbitration provision. *See id.* Even though Plaintiff drafted the APA and Mr. Frye signed it, neither party initialed this provision. *Id.*

Courts determine mutual consent and the intention of the parties "from the written terms of the contract alone, so long as the contract language is clear and explicit and does not lead to absurd results." *Revitch*, 977 F.3d at 717 (internal quotations omitted); *see also* CAL. CIV. CODE § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."). Here, the Court finds mutual consent to the arbitration provision does not exist.

For example, in *Millichap*, a contract for a real estate transaction contained an arbitration provision that was initialed by the buyers but was not initialed by the sellers. *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 85-86 (1998). After the sellers moved to compel arbitration, the *Millichap* court found "the purchase agreement ... contemplated that the arbitration of disputes provision would be effective only if both buyers and sellers assented to that provision." *Id.* at 91. Given "the sellers did not assent to this provision[,] the parties did not agree to binding arbitration." *Id.* Therefore, the court found a valid arbitration agreement did not exist. *Id.* In *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 965 (2020), on the other hand, the court enforced an employment-related arbitration agreement when neither party initialed a portion of the agreement concerning waiving their right to jury trial, but both parties signed the certification paragraph of the arbitration agreement. The court found the parties mutually consented to arbitration because "three separate terms of the agreement acknowledge in explicit and unmistakable language the parties' mutual intent to arbitrate all disputes," and

-11-

1  the parties had signed those other terms. *Id.* at 967.

2      The *Millichap* court refused to enforce the arbitration agreement even though one of

3  the two contracting parties had initialed it. *Id.* at 91. Unlike the partially initialed *Millichap*

4  agreement, neither party to this case initialed the arbitration provision. Thus, this Court,

5  like the *Millichap* court, refuses to enforce an arbitration provision that has not been

6  initialed by both parties and **DENIES** Mr. Frye's motion to the extent it seeks to dismiss

7  this case in favor of arbitration.

8          **2.     *Standing of Cannabis Companies***

9      Mr. Frye simultaneously argues that the Court cannot enforce the APA because it is

10  an illegal contract. He states that Plaintiff "derives 100% of its income from selling,

11  growing or otherwise providing cannabis and cannabis-containing products to the public"

12  in violation of federal law, and thus, has "limited standing" in federal court. ECF No. 19

13  at 6:15-22 (citing Stewart, Ian A., *Cannabis and the Federal Courts*, Cannabis Law Report

14  (Aug. 10, 2020) (https://www.wilsonelser.com/news_and_insights/insights/3927-

15  cannabis_and_the_federal_courts). Plaintiff responds that the contract at issue is for the

16  Cubes, not marijuana or any other illegal or controlled substance. ECF No. 23 at 5:5-9.

17  Thus, Plaintiff contends that because the contract does not involve any illegal or controlled

18  goods, it is neither illegal nor a basis for dismissing this case. *Id.* at 5:9-13.

19      Article III of the United States Constitution limits the subject-matter jurisdiction of

20  federal courts to justiciable "cases" and "controversies." U.S. CONST., ART. III, § 2. The

21  United States Supreme Court has held that for a case to meet the justiciability requirement,

22  a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4)

23  the case does not involve a political question. *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

24  332, 335 (2006). Establishing standing requires the plaintiff to plead (1) a concrete and

25  particularized injury in fact that is both actual or imminent as opposed to conjectural or

26  hypothetical; (2) a causal connection between the alleged injury and the defendant's

27  challenged conduct; and (3) a likelihood that a favorable decision will redress that. *Nat'l*

28  *Family Farm Coalition v. EPA*, 966 F.3d 893, 908 (9th Cir. 2020); *see also United States*

-12-

1 | *v. McIntosh*, 833 F.3d 1163, 1173 (9th Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static*
2 | *Control Components, Inc.*, 572 U.S. 118, 125 (2014)).  Although Mr. Frye cursorily raises
3 | the standing issue by merely citing to an article on a law firm's website, the issue is a
4 | complex one.  The argument appears to be that because federal district courts will not
5 | enforce a contract that violates federal law, *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72,
6 | 77, 83-84 (1982), Plaintiff lacks an actionable injury, and therefore, lacks standing,
7 | divesting the Court of its subject matter jurisdiction.

8 |       Mr. Frye is correct that federal courts will not enforce an unlawful contract.  *See,*
9 | *e.g., Kaiser*, 455 U.S. at 77, 83-84 ("Where the enforcement of private agreements would
10 | be violative of [public] policy [of the United States as manifested in federal statutes], it is
11 | the obligation of courts to refrain from such exertions of judicial power.").  "Both federal
12 | law and California law[5] begin from the core proposition that ... courts will not order a party
13 | to a contract to perform an act that is in direct violation of a positive law directive, even if
14 | that party has agreed, for consideration, to perform that act." *Bassidji v. Goe*, 413 F.3d
15 | 928, 936 (9th Cir. 2005).  As pertains to this case, the Controlled Substances Act, 21 U.S.C.
16 | § 801, *et seq.* (the "CSA"), prohibits the knowing manufacturing, distribution, possession,
17 | or cultivation of a controlled substance. *See* 21 U.S.C. §§ 841(a), 844(a); *see also Gonzales*
18 | *v. Raich*, 545 U.S. 1, 26-29 (2005) (holding that Congress' plenary power under the
19 | Commerce Clause includes the power to prohibit local cultivation of marijuana in
20 | compliance with the CSA, and that "[t]he Supremacy Clause unambiguously provides that
21 | if there is any conflict between federal and state law, federal law shall prevail").
22 | "Controlled substance" is defined to include marijuana. *See* 21 U.S.C. §§ 802(6), 812(b)-
23 | (d).  The CSA also makes it "unlawful for any person .... [t]o sell or offer for sale drug
24 | paraphernalia." 21 U.S.C. § 863(a)(1).  "Drug paraphernalia" is defined to include "any
25 |
26 | ---
27 | [5]    As the Court has noted throughout this case, California contract law applies to this matter.  California law requires a contract to have a "lawful object" in order for a valid contract to be formed. CAL. CIV. CODE § 1550(3).  "The object of a contract is the thing which it is agreed, on the part of the party receiving the consideration, to do or not to do." *Id.* § 1595. Contracts with an unlawful object are void. *Id.* § 1598.

1    equipment, product, or material of any kind which is primarily intended or designed for
2    use in manufacturing … a controlled substance." 21 U.S.C. § 863(d).  Thus, the sale of
3    cubes to grow marijuana, like the Cubes involved in this case, would seem to violate the
4    CSA.

5         Despite the CSA's prohibitions, it contains an exemption, stating that it applies
6    neither to (1) any person authorized by State … law to manufacture, possess, or distribute
7    such items" nor (2) "any item that, in the normal lawful course of business, is imported,
8    exported, transported, or sold through the mail or by any other means, and traditionally
9    intended for use with tobacco products." 21 U.S.C. § 863(f).  As of 2016, forty-three
10   jurisdictions, including California, had legalized marijuana either for medicinal or
11   recreational use. *United States v. McIntosh*, 833 F.3d 1163, 1179 n.3 (9th Cir. 2016); *see*
12   *also* CAL. HEALTH & SAF. CODE §§ 11362.5, 11362.7, 11357, 11358.[6]  Thus, states like
13   California appear to fall within the CSA's exemption for illegality because California
14   authorizes the manufacturing of drug paraphernalia, which would include the Cubes at
15   issue in this case.

16        In sum, despite some form of legalization in the majority of states, marijuana remains
17   illegal under federal law. *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016);
18   *Sandusky v. Goetz*, 944 F.3d 1240, 1242 (10th Cir. 2019).  Here, the contract at issue may
19

20   [6]   At the same time, "California law includes federal law." *Mann v. Gullickson*, No.
21   15-cv-03630-MEJ, 2016 WL 6473215, at *5-6 (N.D. Cal. Nov. 2, 2016). Thus, "a violation
22   of federal law is a violation of law for purposes of determining whether or not a contract is
     unenforceable as contrary to the public policy of California." *Id.* (quoting *Kashani v.*
23   *Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004) (citing *People ex rel.*
     *Happell v. Sischo*, 23 Cal. 2d 478, 491 (1943) (noting that federal law is "the supreme law
24   of the land (U.S. Const., art. VI, sec. 2) to the same extent as though expressly written into
25   every state law")).   However, in 2019, California added a provision to its Civil Code
     expressly providing that contracts related to cannabis are "[a] lawful object of a contract."
26   *See, e.g.*, CAL. CIV. CODE § 1550.5(b)(1) (providing that "commercial activity relating to
27   medicinal cannabis or adult-use cannabis conducted in compliance with California law and
     any applicable local standards, requirements, and regulations shall be deemed to be …. [a]
28   lawful object of a contract").

1  fall within the CSA's exemption.  However, in addition to the CSA's exemption for

2  illegality, the United States Department of Justice "has declined to enforce 21 U.S.C. § 841

3  when a person or company buys or sells marijuana in accordance with state law." *Sandusky*

4  *v. Goetz*, 944 F.3d 1240, 1242 (10th Cir. 2019).  In fact, in 2014, Congress "'reinforced

5  this arrangement by defunding the' Department of Justice's 'prosecution of the exchange

6  of medical marijuana where it is legal under state law.'"[7]  *Id.* (quoting *Green Sol. Retail,*

7  *Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017)).  Thus, these Congressional

8  mandates suggest that enforcing the instant contract would not violate public policy even

9  if they may result in a *prima facie* violation of federal law.

10        When determining whether to assert jurisdiction over a case involving a contractual

11  dispute where the contract involves marijuana, courts have generally examined whether

12  asserting jurisdiction over the dispute would result in a violation of federal law.  Stewart,

13  Ian A., *supra*, at 2.  Consequently, in a case seeking enforcement of an allegedly unlawful

14  contract, courts evaluate whether "a plausible remedy exists for [the plaintiff] that would

15  ─────────────

16  [7]    This issue raises the question of whether the Court's assertion of jurisdiction over a
case pursuing a remedy in violation of federal law violates the Appropriations Clause of

17  the Constitution.  The Appropriations Clause requires that federal funds shall only be used
as a result "[a]ppropriations made by Law."  *See* U.S. CONST. art. I, § 9, cl. 7 ("No Money

18  shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . .

19  . .");  *see also McIntosh*, 833 F.3d at 1174-75 (quoting *Office of Pers. Mgmt. v. Richmond*,
496 U.S. 414, 424, (1990) (noting that this "straightforward and explicit command . . .

20  means simply that no money can be paid out of the Treasury unless it has been appropriated

21  by an act of Congress") (citation omitted).  "The Appropriations Clause plays a critical role
in the Constitution's separation of powers among the three branches of government and

22  the checks and balances between them."  *McIntosh*, 833 F.3d at 1174-75.  It prevents the
Executive and Judiciary branches from taking any action requiring federal funds unless the

23  Legislative Branch has approved those funds.  *Id.*

24        An argument could be made that by spending federal funds on a lawsuit pursuing a
violation of federal law (*e.g.*, manufacturing of marijuana in violation of the CSA), this

25  Court itself is violating federal law and must dismiss this case.  However, as discussed

26  below, because the Court may award a monetary remedy (*i.e.*, the return of the funds paid
to Mr. Frye) without ordering specific performance (*i.e.*, that Mr. Frye keep the funds and

27  hand over the Cubes so Plaintiff can manufacture cannabis), the Court may maintain

28  jurisdiction of this case without ordering a violation of federal law.

-15-

not require a court to order a legal violation." *Bassidji v. Goe*, 413 F.3d 928, 939-40 (9th Cir. 2005) (declining to enforce a contract that would have furthered trade with an Iranian company in violation of an executive order). Here, Mr. Frye seems to attempt to establish that if Plaintiff had received the Cubes for which it had paid, it would have used those Cubes to grow and cultivate marijuana, in violation of the CSA. *But see CannaKorp, Inc. v. United States*, 234 F. Supp. 3d 1345, 1357 n.2 (Ct. Int'l Trade 2017) (noting that the exemption provision set forth in "Subsection 863(f)(1)[,] provides that 'any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items' is not subject to the prohibitions stated in section 863") (citing 21 U.S.C. § 863(f)(1) (2012)). The Contract clearly states that it is for "Cultivation 'Adult' Extreme Cubes," APA, ECF No. 1-2 at 2, and the record in this case indicates the Cubes were intended for marijuana cultivation, *see* ECF No. 7-4 at 63 (noting that Mr. Frye's business was "buying/selling of surplus Cannabis equipment"). Further, neither party disputes that the Cubes were intended for growing Cannabis.

The argument appears to be that this case should be dismissed because federal funds, which are required to adjudicate this matter, are being used to adjudicate a case in which if Plaintiff prevails, would result in a violation of the CSA. Other federal courts have considered whether cases before them pertaining to controlled substances violate the Appropriations Clause. For instance, in *United States v. McIntosh*, the Ninth Circuit held that defendants may seek to enjoin DOJ expenditures, including on the defendants' criminal prosecutions, if the defendants have strictly complied "with all state-law conditions regarding the use, distribution, and cultivation of medical marijuana." 86 F.3d at 1178. It concluded "that, at a minimum, [the appropriations rider] prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws."[8] *Id.* at 1177. It reasoned that the appropriations rider

---

[8]   In 2014, Congress enacted a rider in an omnibus appropriations bill funding the government, which allowed states to implement their own laws authorizing the use and

1  "prohibits [the] DOJ from spending money on actions that prevent the Medical Marijuana

2  States' giving practical effect to their state laws that authorize the use, distribution,

3  possession, or cultivation of medical marijuana." *Id.* at 1176.   Thus, the *McIntosh*

4  defendants had "standing to invoke separation-of-powers provisions of the Constitution to

5  challenge their criminal prosecutions." *Id.* at 1173-74 (noting that their challenge to their

6  conviction and sentence satisfied the case-or-controversy requirement as incarceration

7  "constitutes a concrete injury, caused by the conviction and redressable by invalidation of

8  the conviction"). However, the Ninth Circuit ordered that the case be remanded to the

9  district court to determine "whether their conduct was completely authorized by state law,"

10  and thus, whether dismissal was appropriate. *Id.* at 1179.

11       As another example, in *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 U.S. Dist.

12  LEXIS 152125, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016), the Northern District of

13  California addressed what was, like this case, "[a]t its core, … a simple breach of contract

14  claim." *Id.* at *1. The *Mann* plaintiff sold two businesses to the defendant: a "consulting

15  business for state-regulated marijuana dispensary or cultivation licenses" and a "franchise

16  hydroponic operation." *See Mann*, 2016 U.S. Dist. LEXIS 152125, 2016 WL 6473215, at

17  *1. Following the sale, the defendant-buyer failed to pay the seller the $400,000.00

18  promised for the two businesses, resulting in the plaintiff-seller filing suit for breach of

19  contract. *Id.* at *2. The defendant, however, moved to dismiss the claim by arguing that

20  "the parties' agreement [was] void *ab initio* because it relate[d] to medical marijuana,

21  which is still a prohibited substance" under the CSA. *Id.* at *2.

22       In order to decide whether the parties' business agreement, like the APA in this case,

23  _____

24  possession of marijuana: "None of the funds made available in this Act to the Department
   of Justice may be used, with respect to … California … to prevent any of them from

25  implementing their own laws that authorize the use, distribution, possession, or cultivation
   of medical marijuana." Consolidated and Further Continuing Appropriations Act, 2015,

26  Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). Since 2014, "[a] nearly identical

27  rider has been extended in every subsequent appropriations bill." *United States v. Pisarski*,
   965 F.3d 738, 741 (9th Cir. 2020); *see also* Consolidated Appropriations Act, 2016, Pub.

28  L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015).

1   was enforceable, the *Mann* court had to "navigate the conflict created by the prohibition of

2   medical marijuana under federal law and the legalization of medical marijuana under

3   California law." *Id.* at \*1.   Ultimately, the court denied the defendant's motion for

4   summary judgment, holding that the defendant was not excused from performing her

5   obligations under the contract formed in California merely because the contract related to

6   the marijuana industry. *Id.*   It specifically decided against declining to enforce the

7   agreement because it may have violated the CSA. *Id.*   It reasoned that relevant case law

8   "demonstrates that even where contracts concern illegal objects, where it is possible for a

9   court to enforce a contract in a way that does not require illegal conduct, the court is not

10  barred from according such relief." *Id.*   Because "[m]andating [full] payment [did] not

11  require [the defendant] to possess, cultivate, or distribute marijuana, or to in any other way

12  require her to violate the CSA," the *Mann* court could order the requested relief. *Id.* at \*7.

13       As another court noted, "recent case law involving cannabis-related business

14  contracts does not espouse an absolute bar to the enforcement of such contracts." *See, e.g.,*

15  *Polk v. Gontmakher*, No. 2:18-CV-01434-RAJ, 2021 WL 1090739, at \*2 (W.D. Wash.

16  Mar. 22, 2021) (rejecting the defendants' argument that reliance on an illegal contract alone

17  was sufficient to dismiss the plaintiff's claims).   Other courts have also found that "the

18  mere presence of marijuana" in a federal case does not *per se* bar the plaintiff from relief.

19  *See, e.g., Burton v. Maney (In re Burton)*, 610 B.R. 633, 637-38 (B.A.P. 9th Cir. 2020)

20  (noting that "the mere presence of marijuana near a bankruptcy case does not automatically

21  prohibit a debtor from bankruptcy relief"); *J. Lilly, Ltd. Liab. Co. v. Clearspan Fabric*

22  *Structures Int'l, Inc.*, No. 3:18-cv-01104-HZ, 2020 WL 1855190, at \*12, 2020 U.S. Dist.

23  LEXIS 64340, at \*34-35 (D. Or. Apr. 13, 2020) (noting that "courts will enforce a contract

24  related to marijuana when enforcing the contract does not require a party to violate the

25  CSA" but finding it could not award the plaintiff lost profits because the profits the plaintiff

26  sought would have been earned from violating the CSA); *Street v. ACC Enters., Ltd. Liab.*

27  *Co.*, No. 2:17-cv-00083-GMN-VCF, 2018 U.S. Dist. LEXIS 167299, at \*16-18 (D. Nev.

28  Sep. 27, 2018) (declining to dismiss the plaintiff's claims relating to breach of contract on

1  illegality grounds because the potential remedy would not mandate illegality even though
2  the promissory notes that the plaintiff sought to enforce were "effectively tied to advancing
3  Defendants' cannabis cultivation business; thus promoting acts that violate the Controlled
4  Substances Act").

5      Here, the Court can provide a remedy without requiring performance of the contract,
6  *see* Compl. at 8, Prayer (seeking re-payment of amounts tendered), and only full
7  performance of the contract would potentially result in a violation of law.  Separate and
8  aside from whether full performance would, in fact, violate the law, by providing Plaintiff
9  with the remedy of damages over specific performance, the Court can avoid violating any
10 laws.  For example, if the Court awards Plaintiff relief on its unjust enrichment claim, all
11 that occurs is a return of funds paid to Defendants for goods never received.  Specific
12 performance, on the other hand, which would require Defendants to provide Plaintiff with
13 the Cubes for which it paid, and which it intended to use for growing marijuana, is not
14 being sought.  As a result, a finding that Plaintiff prevails on the unjust enrichment claim
15 would not result in Plaintiff receiving the Cubes and growing marijuana.  Rather, the result
16 would be a return of funds paid for goods that were never received.

17     Thus, the Court **DENIES** Mr. Frye's motion on the basis that the Court lacks
18 jurisdiction over the claims because Plaintiff lacks standing to pursue his claims.

19         ### 3.   *Diversity Jurisdiction*

20     Mr. Frye's final argument as to why this Court should dismiss this case on
21 jurisdictional bases is that the Court lacks diversity jurisdiction over this case because the
22 (1) parties lack diversity and (2) the amount in controversy is not satisfied.  ECF No. 19 at
23 7:1-8.  Misunderstanding the doctrine, he states that "[t]here is nothing diverse about the
24 litigants" because "the Southern District is closer to the Defendant's residence than where
25 the Cannabis Grow Rooms were to be picked up in Santa Maria."  *Id.* at 7:3-4.  Plaintiff
26 responds that because the Complaint pleads that the amount in controversy is $182,000.00,
27 exclusive of costs and fees, the Court should not dismiss this case as the amount in
28 controversy exceeds the jurisdictional minimum of $75,000.00.  ECF No. 23 at 4:12-20.

1    In cases arising out of diversity jurisdiction, district courts have "original jurisdiction
2    of all civil actions where the matter in controversy exceeds the sum or value of $75,000,
3    exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C.
4    § 1332(a)(1). Plaintiff's Complaint pleads jurisdiction exists because Plaintiff is a
5    California corporation suing Mr. Frye, an Arizona citizen, and CDP, an Arizona
6    corporation. Compl. at 2, ¶ 1. In his Motion to Dismiss, Mr. Frye argues this Court should
7    dismiss this case because "[t]he matter before the Court is less than $75,000.00." ECF No.
8    19 at 6:27. However, Mr. Frye does not dispute living in Arizona or that CDP is an Arizona
9    corporation. ECF No. 19 at 7:1-2. Thus, complete diversity exists.

10   Further, as to the amount in controversy, courts evaluate the existence of diversity
11   jurisdiction—including but not limited to the satisfaction of the amount in controversy—
12   at the time of the filing of the complaint. *See, e.g., Rea v. Michaels Stores Inc.*, 742 F.3d
13   1234, 1237 (9th Cir. 2014) (noting that "post-filing developments do not defeat jurisdiction
14   if jurisdiction was properly invoked as of the time of filing") (quoting *Visendi v. Bank of*
15   *America, N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) (internal quotation marks omitted); *see*
16   *also Barefield v. HSBC Holdings PLC*, 356 F. Supp. 3d 977, 985 (E.D. Cal. 2018). Thus,
17   the fact that Mr. Frye paid Plaintiff **$140,000.00** following the filing of the Complaint in
18   this case, thereby reducing the amount in controversy from **$182,000.00** to **$42,000.00**,
19   does not defeat the Court's original diversity jurisdiction over this case at the time of filing.

20   In sum, the Court also **DENIES** Mr. Frye's motion to the extent it argues that the
21   Court should dismiss this case due to a lack of diversity jurisdiction.

22   **B.   Motion to Dismiss for Failure to State a Claim (FRCP 12(b)(6))**

23   Under FRCP 12(b)(6), a complaint must be dismissed when a plaintiff's allegations
24   fail to set forth a set of facts which, if true, would entitle the complainant to relief. In his
25   motion, Mr. Frye submits a "Rebuttle [sic] to Statement of Facts." *See* ECF No. 19 at 3-4.
26   Plaintiff points out that Mr. Frye "attempts to add facts that are not present in the Complaint
27   in [his] motion[ ] to dismiss[,] which is improper." ECF No. 23 at 3:24-26. Plaintiff argues
28   that the Court should disregard any facts provided by Defendants at this stage of the

1 | proceeding. *Id.* at 4:1-2.

2 |      When ruling on a Motion to Dismiss the Court must assume true the facts stated in

3 | the Complaint unless contradicted by documents attached to or incorporated by the

4 | Complaint or facts properly subject to judicial notice. *See, e.g., Rosen v. Uber Techs., Inc.*,

5 | 164 F. Supp. 3d 1165, 1171 (N.D. Cal. 2016); *see also Coto Settlement v. Eisenberg*, 593

6 | F.3d 1031, 1038 (9th Cir. 2010) (providing that on a motion to dismiss, "courts may

7 | consider materials incorporated into the complaint or matters of public record"). Thus, the

8 | Court disregards Mr. Frye's factual statements that contradict the complaint or matters

9 | appropriate for judicial notice. *See id.* More importantly, even if Mr. Frye's factual

10 | statements were supported by evidence, such as a declaration submitted under penalty of

11 | perjury or documents or facts properly subject to judicial notice,[9] the Court determines

12 | factual issues on a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules

13 | of Civil Procedure, not a Motion to Dismiss pursuant to Rule 12 of the Federal Rules of

14 | Civil Procedure. *See* FED. R. CIV. P. 12, 56. In sum, the Court, when ruling on the instant

15 | motion, relies predominantly on the facts from the complaint. In doing so, however, the

16 | Court finds that it must **DENY** Mr. Frye's motion as to Plaintiff's claims for breach of

17 | contract and unjust enrichment but **GRANTS** the motion as to the fraud claim.

18 |      1.   ***First Claim for Relief for Breach of Contract***

19 |      A plaintiff pleading a claim for relief under California law must show (1) a legally

20 | enforceable contract between the parties; (2) the plaintiff's performance or excuse for non-

21 | performance; (3) the defendant's breach of that contract (e.g., by failing to perform or

---

22 | [9]    Parties must support their factual assertions with references to the record or a

23 | supporting declaration to lay a foundation and/or authenticate those facts. Courts need not

    | consider such factual assertions in support of a motion or opposition brief that lack

24 | evidentiary support, such as a citation to an admissible declaration attesting to personal

25 | knowledge of the fact or authenticating an exhibit relied in on the briefing. *See, e.g., Daniel

    | F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 122-23 (N.D. Cal. 2014) (noting that "motions

26 | in federal court are generally decided on the basis of declarations or affidavits or other

27 | written evidence, including properly authenticated exhibits," but courts will "not consider

    | any arguments based on factual assertions that are unsupported by evidence"); *see also*

28 | FED. R. CIV. P. 43(c); S.D. Cal. Civ. R. 7.1(f)(1)-(3).

performing inadequately); and (3) damage to the plaintiff caused by the defendant's breach. *Hickcox-Huffman v. US Airways, Inc.,* 855 F.3d 1057, 1062 (9th Cir. 2017); *see also Kingsley Mgmt., Corp. v. Occidental Fire & Cas. Co. of N. Carolina,* 441 F. Supp. 3d 1016, 1024 (S.D. Cal. 2020) (Curiel, J.) (citing *Reichert v. General Ins. Co.,* 68 Cal.2d 822 (1968)).

Plaintiff's First Claim for Relief for Breach of Contract pleads that (1) "Plaintiff entered into a contract with Defendants Construction & Design Professionals Corp. and Christopher Frye," Compl. at 7, ¶ 21; (2) "Plaintiff performed all relevant obligations under the contract," *id.* at 7, ¶ 22; (3) "Defendants failed to perform their obligations under the contract," *id.* at 7, ¶ 23; and (4) "Defendant's failure to perform its obligations under the contract has resulted in damages to Plaintiff," *Id.* at 7, ¶ 24.

First, in order to evaluate whether Plaintiff has stated a valid claim for relief for breach of contract, the Court must first evaluate whether the APA, which is not signed by Plaintiff, is enforceable against Defendants. The Court previously took judicial notice of the fact that the APA was never signed by Vincent Espinoza, one of Plaintiff's managing members, although it appears to be signed but not dated by Mr. Frye.[10] Order, ECF No. 6 at 13:25-27. As previously noted, *see id.* at 13:12-20, Section 2201 of the California Commercial Code requires contracts for the sale of goods "for the price of $500 or more" to (1) be in writing "sufficient to indicate that a contract for sale has been made between the parties" and (2) "signed by the party against whom enforcement is sought." CAL. COM. CODE§ 2201(1); *see also* CAL. COM. CODE § 120l(b)(37) (noting that "'signed' includes using any symbol executed or adopted with present intention to adopt or accept a writing"). Here, the contract was for **$182,000.00**. As such, the contract exceeded $500.00 and needed to be in writing, signed by the party to be bound (*i.e.,* Defendants). However,

---

[10] Plaintiff seems to admit that it never signed the APA because Armand Nannicola, Plaintiff's other managing member, states in his declaration that Mr. Frye "executed the document and returned it to him." Declaration of Armand Nannicola in Support of Plaintiff's Motion for Order Authorizing Substitute Service of Summons, ECF No. 7-2 at 1-2, ¶ 2. He never states he signed it or addresses who prepared the APA.

-22-

1    the Court previously concluded, when ruling on the Motion for Default Judgment, that the

2    Complaint and evidence before the Court indicated that this case calls falls within the

3    second exception to the Statute of Frauds, allowing enforcement of a contract "where the

4    party against whom enforcement is sought admits … in court that contract for sale was

5    made." *Indian Hills Holdings, LLC v. Christopher Frye, et al.*, No. 3:20-cv-00461-BEN-

6    AHG, 2021 WL 5360956, at *9 (S.D. Cal. Nov. 17, 2021) (noting that Mr. Frye states that

7    the parties acted upon the APA, advises that Plaintiff drafted the APA, and seeks to enforce

8    the arbitration clause in the APA). The Court also found that the case falls within the third

9    exception to the Statute of Frauds where "payment for the goods ha[s] already been made

10    and accepted." *Id.* at *10. Thus, a legally enforceable contract exists between the parties.

11        Second, the Complaint adequately pleads that Defendants breached the contract by

12    failing to deliver the Cubes, which caused Plaintiff damages. Compl. at 7, ¶¶ 23-24.

13        Third, Plaintiff pleads that Defendants' "failure to perform its obligations under the

14    contract has resulted in damages to Plaintiff." Compl. at 7, ¶ 24.

15        Thus, the Court finds that the Complaint sufficiently pleads a claim for relief for

16    breach of contract. Mr. Frye's Motion to Dismiss the First Claim for Relief for Breach of

17    Contract is **DENIED**.

18        **2.**    ***Second Claim for Relief for Fraud***

19        As to the second claim for relief, "[t]he elements of fraud are (1) misrepresentation;

20    (2) knowledge of falsity; (3) 'intent to defraud, i.e., to induce reliance;' (4) justifiable

21    reliance; and (5) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th

22    951 (1997); *see also Dent v. Nat'l Football League*, 902 F.3d 1109, 1125 (9th Cir. 2018)

23    (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997), *as

24    modified* (July 30, 1997) ("The elements of fraud that will give rise to a tort action for

25    deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b)

26    knowledge of falsity (or scienter); (c) intent to defraud, i.e. to induce reliance; (d) justifiable

27    reliance; and (e) resulting damage.") (internal quotations omitted).

28        "[C]laims sounding in fraud are subject to the heightened pleading requirements

-23-

of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud 'must state with particularity the circumstances constituting fraud.'" *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1010 (S.D. Cal. 2020); *see also* FED. R. CIV. P. 9(b) (requiring that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constitute fraud or mistake"). Pleading claims for relief for fraud requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

Here, Plaintiff's Complaint alleges that (1) "Defendants fraudulently represented, *inter alia*, that Defendants were the full and unencumbered owner of the Items which is a material misrepresentation," Compl. at 7, ¶ 16; (2) "[i]n reliance [on] the representations made by Defendants and pursuant to the terms of the Agreement, Plaintiff wired the full obligation of $182,000.00 to Defendants," but "Defendants have failed to deliver the Items," *id.* at 7, ¶ 27; (3) "[i]f Plaintiff knew that Defendants were not the owners of the Items, Plaintiff would not have entered or, even more so, complete Plaintiff's obligations under the Agreement," *id.* at 7, ¶ 28; and (4) "[t]here is now due, owing, and unpaid from Defendants to Plaintiff the sum of $182,000.00 in the form of a refund together with interest thereon at the rate of 10 percent per year," *id.* at 7, ¶ 29. Plaintiff's Opposition to the Mr. Frye's motion elaborates by arguing that there were four material misrepresentations. ECF No. 23 at 3:3-4. These misrepresentations were that (1) "that Defendant was the sole owner of the goods in question"; (2) "Defendant had no undischarged obligations in relation to the goods"; (3) "there were to be no liens or security interest against the goods to be transferred"; and (4) "there is no need for consent for any other person to deliver the goods." *Id.* at 3:4-10. These misrepresentations, however, were not pled in the complaint. Thus, the Court may consider the only misrepresentation pled:

-24-

That Defendants represented they were the owners of the Cubes when they were not. Compl. at 7, ¶ 16.  Further, the Complaint fails to sufficiently plead the fraud claim by failing to plead the "who, when, where, and how" of the misconduct charged. *Vess*, 317 F.3d at 1106.  Thus, the Court **GRANTS** Mr. Frye's Motion as to the fraud claim.

### 3.    *Third Claim for Relief for Unjust Enrichment*

As to the third claim for relief for unjust enrichment, the Court notes that while "California does not recognize unjust enrichment as a claim for relief," *see Astiana v. Hain Celestial Grp., Inc.*, 25 783 F.3d 753,762 (9th Cir. 2015) (citing *Durellv. Sharp Healthcare*, 183 Cal. App. 4th 26 1350, 1370 (2010)), federal courts have declined dismissal of such a claim for relief on the basis that it may constitute a plausible claim for quasi-contractual relief, *Jordan v. Wonderful Citrus Packing LLC*, No. 11-8-cv-00401A WISAB, 2018 WL 4350080, at *3 (E.D. Cal. Sept. 10, 2018).

"The elements for a claim of unjust enrichment are [1]  receipt of a benefit and  [2] unjust retention of the benefit at the expense of another."  *Lyles v. Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (2014) (quoting *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014)) (internal quotations omitted).  "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." *Prakashpalan*, 223 Cal. App. 4th at 1132.

Plaintiff's Third Claim for Relief pleads that (1) "Defendants were unjustly enriched because they received the benefit of the Agreement in the tendered amount of $182,000.00 after refusing to abide by the terms of the Agreement by not delivering the Items that were subject of the Agreement," Compl. at 8, ¶ 33; (2) "[t]he full amount Plaintiff[ ] tendered as a part of the Agreement would not have been achieved except for Defendants['] misappropriation," *id.* at 8, ¶ 34; and (3) "Plaintiff has incurred attorney's fees in connection with this matter, in an amount to be determined at trial, which fees plaintiff is entitled to  recover from pursuant to terms in the Agreement," *id.* at 8, ¶ 35.  These allegations sufficiently plead that (1) Defendants received a benefit and (2) retaining the

-25-

1   benefit would be unjust and at the expense of Plaintiff. *Lyles*, 225 Cal. App. 4th at 769.

2   On that basis, the Court finds that Plaintiff has sufficiently pled facts to state a claim for

3   unjust enrichment.

4           Thus, the Court **DENIES** Mr. Frye's Motion to Dismiss this claim.

5   **C.      Leave to Amend**

6           In determining whether a plaintiff should be granted leave to amend, courts

7   consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated

8   failure to cure deficiencies by previous amendments, undue prejudice to the opposing

9   party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885

10  F.2d 531, 538 (9th Cir. 1989). "[W]here the plaintiff has previously been granted leave

11  to amend and has subsequently failed to add the requisite particularity to its claims, the

12  district court's discretion to deny leave to amend is particularly broad." *Nguyen v.*

13  *Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (holding that the district court did not

14  err by denying leave to amend "because it was clear that the plaintiff had made her best

15  case and had been found wanting") (internal quotations omitted).

16          Courts have broad discretion to grant leave to amend a complaint. *Nguyen v.*

17  *Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). Plaintiff argues that to the extent the

18  Court grants any portion of Mr. Frye's Motion to Dismiss, Plaintiff should be given leave

19  to amend. ECF No. 23 at 5:13-21. Here, the Court notes that Plaintiff filed this case on

20  March 11, 2020. ECF No. 1. Thus, the case has been ongoing for just over one and a

21  half years; yet, it remains in the pleading stage. However, Plaintiff has not sought leave

22  to amend previously, and the case remains in the pleadings stage because Defendants'

23  counsel refused to accept service on behalf of her clients, which required both Defendants

24  to be served via substitute service. As a result, the Court grants Plaintiff leave to amend

25  the fraud claim.

26          However, on a motion to dismiss, the Court must disregard evidence later provided

27  to the Court contradicting Plaintiff's allegation that it did not know Defendants were not

28  the owners of the Cubes as it must assume true the allegations of the Complaint. *Manzarek*,

519 F.3d at 1031.  Even if the Complaint had sufficiently plead fraud, the evidence in this case—namely, that later submitted by Plaintiff itself—refutes a finding of fraud given it shows Plaintiff was well-aware Defendants never owned the Cubes and were, instead, acting as a broker.  Thus, even if Plaintiff's fraud claim had survived dismissal at the pleading stage, it appears it would be ripe for dismissal at the summary judgment stage. Any amendment must be made while complying with Rule of the FRCP.  *Best Fresh LLC* 2021 WL 5444755, at *20 (S.D. Cal. Sept. 20, 2021) (allowing amendment only to the extent it could be done while complying with FRCP 11).

V.    **CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

1.    Mr. Frye's Motion to Dismiss is **DENIED** as to the breach of contract and unjust enrichment claims but **GRANTED** as to the fraud claim only.

2.    Plaintiff is granted leave to amend the fraud claim to the extent Plaintiff believes that it can do while complying with Rule 11 of the Federal Rules of Civil Procedure.

3.    If Plaintiff elects to amend his complaint, the current default judgment against CDP will stand, and Plaintiff must serve Mr. Frye with the amended complaint by mail and e-mail.

4.    Any amended complaint may not add any new claims for relief and must be filed and served within ten (10) days of this order.

5.    Plaintiff and Mr. Frye will participate in an Early Neutral Evaluation Conference before the Hon. Allison H. Goddard on January 7, 2022, at 2:00 p.m.

**IT IS SO ORDERED.**

DATED:    December *15*, 2021

**HON. ROGER T. BENITEZ**
United States District Judge

-27-

3:20-cv-00461-BEN-AHG